J-S36041-22
J-S36042-22

2023 PA Super 87

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| NICOLE BARKMAN | : | |
| Appellant | : | No. 359 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 24, 2022
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000467-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ERIC JAMES BARKMAN | : | |
| Appellant | : | No. 487 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 2, 2021
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000581-2020

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                          **FILED:  May 19, 2023**

Appellant, Nicole Barkman, appeals a probationary judgment of sentence imposed after a jury found her guilty of endangering the welfare of children.  Appellant, Eric James Barkman, appeals carceral judgments of sentence imposed after a jury found him guilty of two counts of endangering the welfare of children.  The Appellants, a wife and a husband, were jointly

---

[*] Retired Senior Judge assigned to the Superior Court.

tried and the focus of their trial and the basis for their charges were unsafe and unsanitary conditions in the home that they were alleged to share with their five children, who were between the ages of two and thirteen years old.[1] N.T. 8/17/21, 2.277, 2.189. On direct review, Appellant Wife challenges the sufficiency and weight of the evidence presented at trial. Appellant Husband joins in the claims raised by his wife and asserts a prosecutorial misconduct claim. Upon review, we affirm.[2]

On the afternoon of May 22, 2020, State Troopers Norman A. Klahre and Matthew C. Jones were dispatched to the Appellants' home in the 100 unit of Weible Drive in Somerset County to check on the status of the Appellants' children due to the condition of their house. N.T. 8/16/21, 1.32-1.33, 1.48; N.T. 8/17/21, 2.210. Upon their arrival, the troopers met with the landlord to the property and noticed "garbage[ and] junk everywhere around the house." N.T. 8/16/21, 1.33. No one was present in the home, but the landlord accompanied the troopers for a walkthrough of the property via an open backdoor in a search for anyone inside. N.T. 8/16/21, 1.34; N.T. 8/17/21, 2.87-2.88, 2.212. Upon approaching the entrance, the troopers smelled an

_____

[1] For the sake of clarity, the Appellants will be singularly referred to herein as "Appellant Wife" and "Appellant Husband."

[2] Because the parties were jointly tried and Appellant Husband seeks to raise issues as they were addressed in his wife's appeal, we hereby consolidate these two appeals *sua sponte*. **See** Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal[.]").

odor of cat urine. N.T. 8/16/21, 1.34; N.T. 8/17/21, 2.212. The troopers also noticed "feces all over the floor." N.T. 8/16/21, 1.35; N.T. 8/17/21, 2.89. There was no running water and trial testimony later differed on whether there were active power utilities in the home.[3] N.T. 8/16/21, 1.35, 1.44, 1.52; N.T. 8/17/21, 2.89, 2.94, 2.212. A heater and a gas dryer were hooked up to a propane tank in the home. N.T. 8/17/21, 2.89, 2.212.

Trooper Klahre opened a kitchen cabinet and "there were hundreds of … small cockroaches that just flowed out like a waterfall" from it. N.T. 8/16/21, 1.35; N.T. 8/17/21, 2.89. A refrigerator in the kitchen was "jam-packed full of food," some of which "may have been rotten." N.T. 8/16/21, 1.44; N.T. 8/17/21, 2.212. There was "garbage all over the floor … throughout the home," and bare mattresses on the floor with feces and stains, presumably from urine, on them. N.T. 8/16/21, 1.35, 1.40-1.42; N.T. 8/17/21, 2.89. It was hard for the troopers to see the floor of the home due to the "plethora" of junk and garbage that inhibited doors from closing around it. N.T. 8/16/21, 1.40-1.41. A bathroom had exposed wiring coming down from the ceiling next to a bathtub that had some water in it. N.T. 8/16/21, 1.44. There was a chicken coop next to the toilet. N.T. 8/16/21, 1.44; N.T. 8/17/21, 2.212. There were dozens of cats with kittens "running all over the place." N.T. 8/16/21, 1.50; N.T. 8/17/21, 2.88. Most of the windows to the home had

_____

[3] The home normally received water from a nearby well, but the water line from the well to the home had broken over the prior winter and the Appellants did not contact the landlord about that issue. N.T. 8/17/21, 2.98-2.110.

been broken or were missing panes of glass. N.T. 8/16/21, 1.40. Photographs of the state of the home at that time were later admitted at the Appellants' trial. N.T. 8/16/21, 1.36-1.46; N.T. 8/17/21, 2.88; Trial Exhibits 1A-1FF.

On the next morning, the troopers returned to the home; at trial, Trooper Klahre referenced that they had been informed that the Appellants had been loading up a trailer at the house, and Trooper Jones addressed a 9-1-1 call made by the Appellants concerning a verbal argument with their landlord. N.T. 8/16/21, 1.46; N.T. 8/17/21, 2.217, 2.225-2.226. When the troopers arrived, no one was present, except for the landlord, and some things had been moved around in the yard. N.T. 8/16/21, 1.47, 1.52; N.T. 8/17/21, 2.217.

Starting in 2017, the landlord, Charles Curtis Wyandt, rented the home to the Appellants as part of a verbal employment arrangement in exchange for Appellant Husband working on Mr. Wyandt's adjoining farm. N.T. 8/17/21, 2.77-2.78, 2.103. On the morning of May 22, 2020, Mr. Wyandt entered onto the rental property to post an eviction notice; he terminated Appellant Husband's employment with his farm three months earlier. N.T. 8/17/21, 2.79-2.80. Mr. Wyandt could see the rental property from the vantage of his own home and was aware that the Appellants were still living at the rental property with their children. N.T. 8/17/21, 2.78-2.79, 2.81-2.82. Upon entering the property to post the eviction notice, Mr. Wyandt saw two of the Appellants' children, between the ages of five and seven years old, roaming around the outside of the property in the absence of their parents. N.T.

8/17/21, 2.82-2.83. While it was "chilly" and raining at the time, one of the children lacked socks and shoes, and the other one lacked socks, shoes, and a shirt. N.T. 8/17/21, 2.83. After Mr. Wyandt told them to go in the house because it was cold outside, the children eventually emerged from the home wearing sweatshirts and left in a neighbor's vehicle that was stopped down the road from the home. N.T. 8/17/21, 2.84-2.85, 2.102. Two photographs of the children that were taken by Mr. Wyandt that morning were admitted at the Appellants' trial. N.T. 8/17/21, 2.85-2.86; Trial Exhibits 2A-2B.

When the children went into the home, Mr. Wyandt called the county Children and Youth Services agency ("CYS") to report that the children had been alone there; it was not the first time he knew of the children being left alone, and he had previously warned Appellant Husband about that. N.T. 2/17/21, 2.87, 2.92. CYS directed him to contact the state police. N.T. 2/17/21, 2.87.

Three CYS caseworkers responded to the Appellants' home on May 22, 2020. N.T. 2/17/21, 2.187. The caseworkers stayed outside the home and looked inward into it. N.T. 2/17/21, 2.188-2.189. One of the caseworkers, Diana Fath, later recalled at the Appellants' trial that she saw trash, a large trailer, and "a lot" of debris in the front yard, and smelled an odor of feces and sewage as she got closer to the home. N.T. 2/17/21, 2.188-2.189. Ms. Fath contacted the Appellants, and they were uncooperative in providing details of where they were and where their children were, but they said that their youngest child was with them. N.T. 2/17/21, 2.190. They informed Ms.

- 5 -

Fath that they were not living in the home on Weible Drive and were staying in different hotels. N.T. 2/17/21, 2.191. They said that the home on Weible Drive "was a mess because they were getting ready to move and things were in the front yard because they were getting ready to move to a different place." N.T. 2/17/21, 2.192. They also told Ms. Fath "that their children were safe and that CYS needed to get their heads out of their – 'A' word." N.T. 2/17/21, 2.193. They would not permit CYS to have a face-to-face meeting with their children and compromised by offering to send the caseworker a video of the youngest child who was with them. N.T. 2/17/21, 2.193. The caseworker never received the video even after she called the Appellants back, they assured her that they would send it, and Ms. Fath provided them with her e-mail address. N.T. 2/17/21, 2.194-2.195, 2.214.

One of the other caseworkers, Jamie Knopsnyder, eventually contacted the Appellants. N.T. 2/17/21, 2.201. They told her that they believed the landlord was the cause of "their house being that way," that they were not living there, and that they were staying in a hotel. N.T. 2/17/21, 2.202. They also said that the refrigerator in the hotel was not big enough to hold all their food, so they had been going back and forth between the home and their hotel to get food that they were storing at the home. N.T. 2/17/21, 2.202-2.203. After Ms. Knopsnyder and her supervisor saw Mr. Wyandt's photographs of the inside of the home, they contacted a county solicitor early in the morning on May 23, 2021, to seek an emergency order with respect to the children. N.T. 2/17/21, 2.203-2.204. CYS subsequently took the children back to their

agency and placed them in separate foster homes. N.T. 2/17/21, 2.204. The children remained in foster care at the time of the Appellants' trial. N.T. 2/17/21, 2.145, 2.207.

Based on the condition of the Appellants' home on May 22, 2020, Trooper Jones filed five charges of endangering the welfare of children against each of the Appellants, one for each of their children. N.T. 2/17/21, 2.215-2.216. On the afternoon of May 23, 2020, the Appellants were stopped for a traffic violation in Adams Township, Cambria County, at which time they were arrested on the open warrants for the child endangerment charges. N.T. 2/17/21, 2.218.

In March of 2016, the Appellants had an earlier interaction with the Somerset County CYS. At that time, they were living in a different home in the Boswell Borough of the county and CYS had been referred to check on the status of the conditions of their home. N.T. 2/17/21, 2.151-2.154. Upon conducting a home visit, a CYS caseworker saw piles of slab wood, a make-shift wooden teepee, and a refrigerator with a door ajar in the backyard. N.T. 2/17/21, 2.157. The caseworker determined that the items in the backyard raised safety concerns for the Appellants' four children at that time who then ranged from two months to seven years old. N.T. 2/17/21, 2.157. Inside the home, the caseworker noted multiple conditions raising safety concerns: old appliances, a furnace, and some "junk" that prevented a clear path to the first-floor staircase; a lack of railings or sides on the staircase; a lack of a baby-gate on the second floor landing; an open-top fifty-gallon fish tank on

the second floor that was filled with debris and dirt; a hole on the upstairs floor that was 18-to-20 inches wide that the children could have fallen through; boarded-up windows; dirty floors and old carpeting that had debris and food particles on them; an odor of garbage and rotten food; a stove covered in grease, grime, and dirt; uncovered dirty mattresses on the floor in a bedroom with strewn blankets and uncovered, blackened pillows; a heater hooked up to a propane tank in the bedroom; a lack of running water to a commode that had dirt and debris in it; a plastic bucket in the bathroom with a brown substance in it; and a filthy, blackened, seemingly-unused bathtub in the bathroom. N.T. 2/17/21, 2.158-2.166. Photographs of the conditions observed during the March 2016 home visit were admitted into evidence at the Appellants' trial. N.T. 2/17/21, 2.166-2.167; Trial Exhibits 8A-8R.

During the March 2016 visit, the CYS caseworker saw that the Appellants' children were outside the home and not dressed appropriately for the cold weather at that time. N.T. 2/17/21, 2.168. The children were not removed from the home at that time. N.T. 2/17/21, 2.168. The Appellants, after some convincing, agreed to cooperate with CYS, make necessary repairs, and "get the home safe." N.T. 2/17/21, 2.169. CYS closed their case with respect to the 2016 visit in September of 2019 after gaining access to the Appellants' home and concluding that there were no longer any safety concerns. N.T. 2/17/21, 2.184-2.185.

Another referral for housing concerns was made to CYS in October of 2019. N.T. 2/17/21, 2.185. Due to a lack of cooperation by the Appellants,

a dependency petition was filed in the lower court. N.T. 2/17/21, 2.170, 2.185. That petition was withdrawn without prejudice in January of 2020, after CYS conducted an unannounced home visit and found the home to be clean and appropriate. N.T. 2/17/21, 2.185.

At the Commonwealth's request, the trial court ordered the consolidation of the instant child endangerment cases. Consolidation Order, 7/9/21, 1. On August 16-17, 2021, the Appellants were jointly tried before a jury, each on five counts of endangering the welfare of children. The Commonwealth presented the testimony of the following witnesses: the state troopers that visited the Appellants' home on March 22-23, 2020 (Troopers Klahre and Jones); the landlord (Mr. Wyandt); an assistant director/custodian of records for the Somerset County CYS (Natalie Hunt); the caseworker for the CYS that conducted the March 2016 visit (Debra Rugg); a CYS caseworker at the time that the agency's initial file for the Appellants was closed in 2019 (Abby Bowlby); and two of the CYS caseworkers that responded to the Appellants' home on May 22, 2020 (Ms. Fath and Ms. Knopsnyder). Appellant Wife testified. Appellant Husband declined to offer testimony.

Appellant Wife testified that she had stopped residing in the home on Weible Drive in the beginning of May of 2020. N.T. 8/17/21, 2.244-2.246. She acknowledged that, in February of 2020, her husband was fired from his employment with their landlord and that the landlord served them with an eviction notice. N.T. 8/17/21, 2.246-2.248. After they sought legal assistance with the eviction, Appellant Wife alleged that the landlord would drive past

their house every day in April of 2020 and scream at them. N.T. 8/17/21, 2.249. She asserted that all the utilities to the home were functional at that time. N.T. 8/17/21, 2.249. She testified that they moved out of the home in the first week of May and began staying with family and friends after they came home and there was no running water to the home. N.T. 8/17/21, 2.249-2.251. She claimed that, when they moved out, the house "was in [a] nice condition," such that "[e]verything was neat and organized as much as possible," with furniture and packed boxes in the home. N.T. 8/17/21, 2.250. She claimed that they returned each day to give their animals food and water and to take care of their cats' litter boxes. N.T. 8/17/21, 2.250.

Appellant Wife denied that the home was in the condition displayed in the exhibit photographs at the time that her family moved out of the residence. N.T. 8/17/21, 2.251. Specifically, she denied that there were chicken cages in the bathroom, cat feces over the beds, and an unbearable stench in the home. N.T. 8/17/21, 2.252. She claimed that, on the morning of May 22, 2020, her two oldest boys were staying with a friend up the road from the Weible Drive home. N.T. 8/17/21, 2.253-2.254. She asserted that CYS never told her that the police wanted to talk to them and that she texted and e-mailed videos to CYS that the agency said they never received. N.T. 8/17/21, 2.254-2.255. She testified that CYS stated that their caseworkers and the police were at the Weible Drive home but that she was not advised of any pending criminal charges or any outstanding warrants. N.T. 8/17/21, 2.256.

Appellant Wife testified that she and her husband went to the Weible Drive home on May 23, 2020; her husband stayed on the porch while she went into the home to "throw [some] stuff out." N.T. 8/17/21, 2.256. They were trying to be quick so as to avoid their landlord but the landlord blocked their vehicle in the driveway with an off-road vehicle. N.T. 8/17/21, 2.257. She recalled "a lot of screaming and yelling," before she called the state police, she and her husband drove away through the yard, and they left the area with the landlord following after them. N.T. 8/17/21, 2.257-2.258.

On cross-examination, Appellant Wife suggested that their landlord was responsible for the condition of the Weible Drive home on May 22-23, 2020. N.T. 8/17/21, 2.266 ("I believe he had the motive and he has threatened us that he was going to get us out of there one way or the other."); **see also** N.T. 8/17/21, 2.270 (Appellant Wife agreeing that it was her opinion that her landlord "wanted to trash his own house after [she] left it"). As for her children that were at the home on the morning of May 22, 2020, she asserted that they had appropriate clothing on when she left them with her friends. N.T. 8/17/21, 2.267-2.268. She disagreed with the landlord's account that the children retrieved clothing from the home as she testified that she had already removed "every piece of clothing" from the home. N.T. 8/17/21, 2.269.

Appellant Wife testified that she had "no idea how there was feces on the mattresses." N.T. 8/17/21, 2.270. She also asserted that the chickens were never in their bathroom and that they were in a separate room attached

to a furnace room in the home. N.T. 8/17/21, 2.271. She denied knowing how the chickens "got to the bathroom" and "how the heat lamp that was in there with them got there." N.T. 8/17/21, 2.271.

The jury found Appellant Wife guilty of a single count of endangering the welfare of children and Appellant Husband guilty of two counts of endangering the welfare of children. Verdict Sheet, 8/17/21, 1; N.T. 8/17/21, 2.338-2.340. At deferred sentencing hearings, the court sentenced Appellant Husband to concurrent terms of twenty-one to forty-two months' imprisonment and Appellant Wife to a two-year term of probation with restrictive conditions, including six months of electronic monitoring. N.T. 12/2/21, 11-12 (Appellant Husband's case); Sentencing Order, 12/2/21, 1-2 (Appellant Husband's case); Sentencing Order, 2/24/22, 1-2 (Appellant Wife's case). Appellant Wife did not file a post-sentence motion, and timely filed a notice of appeal and a statement of matters complained on appeal pursuant to Pa.R.A.P. 1925(b).[4] Notice of Appeal, 3/25/22, 1 (Appellant Wife's case); Rule 1925(b) Order, 3/30/22 (Appellant Wife's case); Rule 1925(b) Statement, 6/30/22, 1-3 (Appellant Wife's case). Following the denial of a

---

[4] We note that the Commonwealth filed their brief three days beyond its initial deadline in Appellant Wife's case and one day late in the Appellant Husband's case. While this Court has declined to review the arguments presented in some instances where the Commonwealth has filed an untimely brief for Appellee, **see, e.g, Commonwealth v. Brown**, 161 A.3d 960, 965 n.2 (Pa. Super. 2017), we remind the Commonwealth of its obligation to comply with our procedural rules, including briefing deadlines. We also note that it is a better course of action for a party to file an application for an extension of time rather than to just ignore this Court's deadlines.

timely-filed post-sentence motion, Appellant Husband timely filed a notice of appeal and voluntarily filed a Rule 1925(b) statement.[5] Post-Sentence Motion, 12/9/21, 1-3 (Appellant Husband's case); Order Denying Post-Sentence Motion, 4/19/22, 1 (Appellant Husband's case); Notice of Appeal 4/25/22, 1 (Appellant Husband's case); Rule 1925(b) Statement, 5/25/22, 1-4 (Appellant Husband's case).

Appellant Wife presents the following questions for our review:

1.  Whether the evidence presented by the Commonwealth at trial was insufficient to establish [that Appellant Wife] possessed the requisite *mens rea* as an essential element to sustain a conviction of the charge of endangering the welfare of children?

2.  Whether the evidence presented by the Commonwealth at trial was insufficient to establish [that Appellant Wife] violated a duty of care, protection or support of her children as an essential element to sustain a conviction of the charge of endangering the welfare of children?

3.  Whether the evidence presented by the Commonwealth at trial was insufficient to establish [that Appellant Wife] engaged in a course of conduct as an essential element to sustain a conviction of the charge of endangering the welfare of children?

_____

[5] In his notice of appeal, Appellant Husband asserts that he is appealing the order, dated April 19, 2022, that denied his post-sentence motion by operation of law. Notice of Appeal, 4/25/22, 1 (Appellant Husband's case). This appeal, however, properly lies only from the imposed judgments of sentence. We have amended the caption accordingly. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.").

4. Whether the verdict rendered by the jury was against the weight of the evidence presented by the Commonwealth at trial?

5. Whether the verdict rendered by the jury was against the weight and sufficiency of the evidence as the verdicts against [Appellant Wife] and her co-defendant were inconsistent and cannot be supported by the evidence presented by the Commonwealth?

Brief for Appellant Wife, 6-8 (references to responses by the lower court, suggested answers, and unnecessary capitalization omitted; emphasis added).

Appellant Husband has filed a joinder brief, pursuant to Pa.R.A.P. 2137, in which he purports to "join[ ] in the arguments of his co[-]defendant" and presents an additional claim raising the following question for our review:

[6]. Did the actions of the District Attorney, Jeffrey Lynn Thomas, constitute prosecutorial misconduct so as to warrant a mistrial?

Brief for Appellant Husband, 3-4 (question sequentially renumbered for purposes of these now-consolidated appeals).[6] We will first address Appellant

_____

[6] Appellant Husband explicitly "adopts and incorporates the arguments set forth" in the brief for Appellant Wife pursuant to Pa.R.A.P. 2137 ("In cases involving more than one appellant or appellee, including cases consolidated for purposes of the appeal pursuant to Rule 513 (consolidation of multiple appeals), any number of either may join in a single brief, and any appellant or appellee may adopt by reference any part of the brief of another[.]"). At the same time, we note that Appellant Husband's brief lacks multiple required sections, including a statement of jurisdiction, a separate statement of the questions involved, and a statement of the case. *See* Pa.R.A.P. 2111(a) (setting forth the separate and distinct sections that are to be included in a
*(Footnote Continued Next Page)*

Wife's claims and then proceed to the additional claim raised by Appellant Husband.

In Appellant Wife's first three claims, she challenges the sufficiency of the evidence. These claims present questions of law and thus are subject to plenary review under a *de novo* standard. ***Commonwealth v. Coniker***, 290 A.3d 725, 733 (Pa. Super. 2023). Upon reviewing these claims, we are tasked with determining "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense" beyond a reasonable doubt. ***Commonwealth v. Arias***, 286 A.3d 341, 349 (Pa. Super. 2022) (citations omitted). Upon conducting this review, we are guided by the following precepts:

> In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable

---

brief for an appellant). We will not quash Appellant Husband's appeal on account of these briefing deficiencies where they do not substantially impair our ability to conduct meaningful appellate review. At the same time, we note that, while Rule 2137 permitted Appellant to adopt the brief of his co-defendant *in toto*, that rule did not dispense with his overall briefing obligations where he only adopted the argument section of his co-defendant's brief. Nevertheless, we remind counsel for Appellant Husband of her obligation to comply with our procedural rules, including our briefing requirements.

doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa. Super. 2022) (citations omitted).

Here, the Appellants were convicted of and sentenced for endangering the welfare of children ("EWOC"), as a felony of the third degree, under 18 Pa.C.S. § 4304(a)(1), one count for Appellant Wife and two counts for Appellant Husband. Sentencing Order, 12/2/21, 1-2 (Appellant Husband's case); Sentencing Order, 2/24/22, 1-2 (Appellant Wife's case); Order of Court, 8/17/21, 1 (Appellant Wife's case); Order of Court, 8/17/21, 1 (Appellant Husband's case); Verdict Sheet, 8/17/21, 1 (Appellant Wife's case); Verdict Sheet, 8/17/21, 1 (Appellant Husband's case); Bills of Information, 9/10/21, 1-2 (Appellant Husband's case); Bills of Information, 8/20/20, 1 (Appellant Wife's Case). Section 4304 defines EWOC, in relevant part, as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he [or she] knowingly endangers the welfare of the child by violating a duty of care, protection, or support." 18 Pa.C.S. § 4304(a)(1). Further, "[i]f the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree." 18 Pa.C.S. § 4304(b)(ii); *see also Commonwealth v. Spanier*,

192 A.3d 141, 146 (Pa. Super. 2018) (holding that the Commonwealth must prove that a defendant engaged in a course of conduct in order to sustain a conviction for EWOC that is graded as a felony of the third degree).

"To sustain a conviction for EWOC, the Commonwealth must prove that a defendant knowingly violated a duty of care to the minor victim." **Commonwealth v. Keister**, --- A.3d ----, 2023 WL 2764450, *2 (Pa. Super., filed Apr. 4, 2023) (citation omitted). In particular,

> the Commonwealth must prove that: 1) the accused is aware of his or her duty to protect the child; 2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

**Id.** at *2, **citing Commonwealth v. Sebolka**, 205 A.3d 329, 337 (Pa. Super. 2019).

Appellant Wife initially argues that the evidence was insufficient to prove that she acted with the requisite *mens rea* for EWOC. Appellant Wife's Brief at 14-18. She agrees that she was aware of her duty to protect her children but alleges that the evidence failed to establish that she "knowingly" placed her children in a situation that would threaten their physical or psychological welfare and did not show that she failed to act to remedy the situation that existed in the home. **Id.** at 15-16. In support of this argument, she agrees that three witnesses – the two state troopers and the landlord – established the conditions of the home as of May 22, 2020, but points out that *only one*

witness, the landlord, offered testimony that she was residing with her family at the home at that time. *Id.* at 16-17. Due to the lack of *additional* evidence of her residency at the home as of May 22, 2020, Appellant Wife asserts that the evidence was insufficient. *Id.* at 17-18. This argument fails to properly review the evidence under the applicable standard of review.

The testimony of the landlord, Mr. Wyandt, was alone sufficient to establish Appellant Wife's residency at the time the poor conditions of her home were discovered. *Cf. Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978) (*en banc*) ("a positive identification by one witness is sufficient for conviction"). The landlord testified that Appellant Wife, her husband, and their children were still residing in the home in May of 2020. N.T. 8/17/21, 2.77. He also testified that were was no point in time that the Appellants and their children were not living at the residence and that he knew that the Appellants were still living there because he "could see them at all times." N.T. 8/17/21, 2.81-2.82. As he explained at the trial, the Appellants' home was on an adjoining property to his own home, and he could see the Appellants' home from the windows of his own home and that he could see activity in the Appellants' home. N.T. 8/17/21, 2.78-2.79. From this account of the landlord's vantage point of the Appellants' home and his observations of the activity at the home, the jury was able to reasonably infer and conclude that the Appellants and their children were residing in the home while it was in, as the Commonwealth describes, "unsafe, deplorable conditions." Appellee's Brief at 5.

Appellant Wife's argument concerning the sufficiency of the evidence for her *mens rea* is entirely based on the lack of additional corroborating witnesses supporting the landlord's account of her residency. This argument addresses only the weight of the landlord's testimony, and cannot properly be considered on sufficiency review. ***See Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (claims challenging the weight and sufficiency of the evidence are distinct and the arguments in support of them are not interchangeable). Rather, a sufficiency claim must accept the credibility and reliability of all evidence that supports the verdict. ***Commonwealth v. Breakiron***, 571 A.2d 1035, 1042 (Pa. 1990); ***see also Commonwealth v. Bristow***, 538 A.2d 1343, 1345-1346 (Pa. Super. 1988) (sufficiency analysis does not permit an examination of credibility, reliability, or weight of the evidence). Accordingly, we are unable to disregard the landlord's testimony about her residency at the Weible Drive home to conclude that the evidence was insufficient to establish her *mens rea*.[7]

In her second claim, Appellant Wife argues that the evidence was insufficient to establish that she violated a duty of care, protection, or support for her children. Appellant Wife's Brief at 18-20. Her theory for this claim is the same as the initial claim reviewed above: the evidence proved that the home was "in deplorable condition unsuited for habitability" as of May 22,

---

[7] The evidence at trial did not suggest that Appellant Husband had any different residency patterns from Appellant Wife. Accordingly, the denial of this claim or the remaining sufficiency claims for lack of merit would equally apply to Appellant Husband where he joins his wife's claims.

2020, but only the testimony of the landlord, Mr. Wyandt, supported the notion that the Appellants and their children were residing at the home during the existence of its unsuitable conditions. *Id.* at 19-20. This claim fails for the same reasons as the first claim above because it fails to review the evidence in the light most favorable to the Commonwealth and improperly invites us to disregard the landlord's testimony.

The landlord testified that, based on his observations of the Appellants' home, the Appellants and their children had never moved out of the home prior to May 22, 2020. N.T. 8/17/21, 2.77-2.79, 2.81-2.82. That notion of continued residency was supported by the landlord's testimony that two of the Appellants' children were able to retrieve clothing from the home on the morning of May 22, 2020, when the landlord told them to go into the home because it was cold outside. N.T. 8/17/21, 2.82-2.85. From this evidence, the jury was able to draw the reasonable inference that the Appellants were still living with their children in the deplorable and unsanitary conditions in the home that were documented at trial that included, *inter alia*, a lack of running water, floors covered in feces and debris, a pervasive smell of urine, a propane tank heater that posed a fire hazard, an infestation of cockroaches, and bare mattresses covered in stains from feces and urine. N.T. 8/16/21, 1.33-1.35, 1.40-1.42, 1.44, 1.52; N.T. 8/17/21, 2.89, 2.94, 2.212; Trial Exhibits 1A-1FF. Evidence and inferences drawn therefrom that demonstrated that the Appellants permitted their children to live in conditions that posed threats to the children's health, hygiene, and psychological well-being amply supported

the element that the Appellants had violated a duty of care, protection, or support for their children. ***See Commonwealth v. Taylor***, 471 A.2d 1228, 1230 (Pa. Super. 1984) ("Section 4304 was drawn broadly to cover a wide range of conduct in order to safeguard the welfare and security of children" and it was based on the "common sense of the community and the broad protective purposes for which it was enacted"); ***see also Commonwealth v. Vela-Garrett***, 251 A.3d 811, 815 (Pa. Super. 2021) (same).

In her third claim, Appellant Wife asserts that the evidence was insufficient to establish that she had engaged in a course of conduct of endangering the welfare of her children that was necessary to support the grading of her offense. Appellant Wife's Brief at 20-23. She argues that the Commonwealth could not establish a course of conduct based on the evidence of the condition of her family's former home that was documented in 2016 because the events in 2016 and 2020 were "not continuous" and "there were two occasions between 2016 and May 2020 where CYS determined that the living conditions were safe for the children." *Id.* at 21. As for the conclusion that the trial court draws in its opinion, that the course of conduct could be supported by the reasonable inference that the unsanitary conditions in the home could not have occurred suddenly and thus the children were subjected to those conditions for days, weeks, or months, Appellant Wife points out that "[n]o evidence was ever presented that the[ ] conditions existed over any extended period of time." *Id.* at 23; Trial Court Opinion, 6/30/22, 6-7 (Appellant Wife's case). She additionally notes, "The only evidence that could

be presented was from May 22, 2020, when it was clear there was no one living in the residence and that Appellant, co-defendant and the children had vacated the residence." Appellant Wife's Brief at 23.

This claim is meritless because, in making her arguments in support of it, Appellant Wife fails to review the evidence pursuant to the applicable standard of review. As with the two prior sufficiency claims, we cannot disregard the testimony of the landlord which asserted that the Appellants and their children were still residing at the Weible Drive home as of May 22, 2020. **See Commonwealth v. Gray**, 867 A.2d 560, 567 (Pa. Super. 2005) ("[i]n evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received…") (citations omitted). Moreover, Appellant Wife's arguments improperly presume that the sufficiency of the evidence can only be based on direct evidence of guilt to the exclusion of any circumstantial evidence and reasonable inferences that may be derived from the evidence presented. **See Commonwealth v. Lake**, 281 A.3d 341, 346 (Pa. Super. 2022) (on sufficiency review this Court "evaluates the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence" and "the Commonwealth may sustain its burden solely by means of circumstantial evidence") (citations omitted).

In any event, the evidence was sufficient to support a "course of conduct" for purposes of the grading of the Appellants' offenses. The phrase

"course of conduct" is used in the EWOC statute to differentiate the penalties for single and multiple endangering acts. *Commonwealth v. Kelly*, 102 A.3d 1025, 1031 (Pa. Super. 2014) (*en banc*) (noting that, although the EWOC statute does not define "course of conduct," the phrase is used in that context to differentiate the penalties for single and multiple endangering acts). In interpreting the legislative language for "course of conduct," this Court has explained that it is designed "to punish a parent who over days, weeks, or months, abuses his children, such as repeatedly beating them or depriving them of food." *Commonwealth v. Popow*, 844 A.2d 13, 17 (Pa. Super. 2004).

In its opinion, the trial court suggests that the condition of the home as it was observed on May 22, 2020, permitted the reasonable inferences that the unsanitary conditions in the Appellants' home had developed over time and the Appellants' children had been subjected to those conditions for an indefinite but continuing period of time:

> We believe the evidence sufficiently established that Appellant[ Wife]'s residence was in such a state of disrepair that it could not have suddenly reached that condition. As detailed above, the evidence proved that Appellant[ Wife] was living in the home with at least one of her children. The logical inference, therefore, is that Appellant[ Wife]'s children were subjected to the putrid conditions of Appellant[ Wife]'s home for days, weeks or months before the incident on May 22, 2020. Appellant[ Wife]'s day-after-day, repeated tolerance of and failure to rectify the putrid conditions reasonably could have been viewed by the jury not as a single act, but rather as a continuity of conduct.

Trial Court Opinion, 6/30/22, 7 (Appellant Wife's case). We agree with the trial court's analysis.

The unsanitary and deplorable conditions that were observed at the Appellants' home, which the landlord's testimony supported was still the residence of the Appellants and their children, could have been reasonably inferred to have developed over a period of days, weeks, or months. The photographs of the home and the testimony of the state troopers addressed, among other things, an immense accumulation of trash and debris on the floors of the home, the presence of an overpowering odor of urine, an infestation of cockroaches, and the presence of feces and urine stains on uncovered mattresses. These deplorable aspects of life for the Appellants' children did not manifest in an instant. Multiple actions and an ongoing state of neglect by the Appellants over time permitted the development of these conditions leading up to May 22, 2020. From these circumstances, the jury was able to reasonably infer that the Appellants engaged in a course of conduct that endangered the welfare of their children and the evidence was sufficient to support the grading of the Appellants' offenses. *See, e.g., Commonwealth v. Engler-Harper*, 2022 WL 3367510, *6-7 (Pa. Super., filed Aug. 16, 2022) (finding evidence sufficient for a course of conduct for purposes of EWOC grading based on an Appellant's "nefarious actions constituting multiple endangering acts over an extended period;" the evidence supporting EWOC included deplorable and unsanitary conditions of children's bedrooms that included carpets saturated in urine, soiled and urine-stained

mattresses, and "lots of clutter") (unpublished memorandum cited for its persuasive value pursuant to Pa.R.A.P. 126(b)(2)). Here, the confluence of circumstances strongly suggested an ongoing pattern of neglect, not merely a momentary state of affairs. Accordingly, the evidence was sufficient to support the grading of the EWOC convictions.

Appellant Wife combines her last two claims in a single argument section. She alleges that the verdict was against the weight of the evidence, the jury was not permitted to render inconsistent verdicts as they did by finding her guilty of one EWOC count and finding her husband guilty of two EWOC counts, and the resulting inconsistent verdicts in her and her husband's cases "shocks the sense of justice." Appellant Wife's Brief at 24-28. These arguments do not entitle the Appellants to relief.

To the extent that Appellant Wife challenges the weight of the evidence, she waived that claim by not preserving it before the trial court. A claim challenging the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A)(1)-(3). The failure to preserve a weight claim will result in waiver, even if the trial court addresses the claim in its opinion for this Court. *See Commonwealth v. Thompson*, 93 A.3d 478, 491 (Pa. Super. 2014) ("Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.") (citations omitted).

Appellant Wife's counsel made no oral motion challenging the weight of the evidence following the announcement of the verdict. Appellant Husband's counsel referred to a mutual preservation of "an oral Motion for Judgment of Acquittal and New Trial" at the end of the trial, without reference to what claims would be addressed in that motion, but then Appellant Husband's counsel agreed to pursue that motion either in a pre-sentence motion for extraordinary relief or a written post-sentence motion. N.T. 8/17/21, 2.349-2.350. Appellant Wife failed to ensure that the notes of testimony from her sentencing hearing were moved into the certified record, so we have no ability to confirm whether a weight claim was lodged at that proceeding. The trial court's docket for Appellant Wife's case also does not include any reference to the filing of a pre- or post-sentence motion filed by Appellant Wife or any rulings thereof on any post-verdict motions between the entries for the guilty verdict and the filing of her notice appeal. Appellant Wife also fails to address or discuss any weight claims directed to the trial court in her appellate brief. In these circumstances, we find that Appellant Wife waived her weight claim. *See Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) ("An appellant's failure to avail himself of any of the prescribed methods of presenting a weight of the evidence issue to the trial court constitutes waiver of that claim.") (citation omitted); Pa.R.Crim.P. 607, *Comment* (stating: "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with trial judge or it will be waived").

To the extent that Appellant Husband joins in his wife's weight claim, we note that Appellant Husband preserved a weight claim in a timely-filed post-sentence motion which addressed the main thrusts of his wife's waived appellate weight claim which focuses on the supposed lack of evidence establishing their children's residence at the home and a violation of a duty of care by the Appellants. Post-Sentence Motion, 12/9/21, ¶ 2(a)-(e) (Appellant Husband's case). Accordingly, we must proceed with substantive review of his weight claim.

Our controlling standard of review provides that our appellate review of a weight claim concerns the denial of the post-verdict challenge to the weight of the evidence rather than a first-hand review of the credibility of the trial evidence:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment.

Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. Arnold*, 284 A.3d 1262, 1277 (Pa. Super. 2022), *quoting Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007) (citations omitted).

Here, the trial court determined that the verdict was not against the weight of the evidence because the jury simply believed the Commonwealth's witnesses over Appellant Wife's testimony on the issues concerning the Appellants' residence at the Weible Drive home and the condition of that home, and the resulting verdict did not "shock the conscience of the court." Trial Court Opinion, 7/1/22, 9 (Appellant Husband's case). We ascertain no abuse of discretion by the trial court in denying Appellant Husband's weight-of-the-evidence claim. The verdict was not shocking because Appellant Wife's testimony suggested that the landlord had essentially destroyed his own property to get revenge on the Appellants because of a tenancy dispute. Putting aside that that suggestion could be seen as far-fetched on its face, Appellant Wife's testimony was also predicated on a theory that the home was in a "nice condition" in early May 2020, when the Appellants had supposedly moved out, N.T. 8/17/21, 2.250, but that it had suddenly became deplorable even though Appellant Wife testified that she and had her husband returned to the property "every single day" to feed their animals at the home. *Id.* The testimony of the state troopers and the photograph exhibits, on the other

hand, suggested that the extremely poor conditions in the home developed over spans of weeks, if not months. The Commonwealth's evidence belied Appellant Wife's testimony about the state of the home, and obviously caused the jury to wholly disbelieve her testimony. In these circumstances, we agree with the trial court's analysis that the jury's verdict was not shocking, and we fail to find any basis for determining that the trial court abused its discretion by denying Appellant Husband's weight claim.

Appellant Wife's related claim that the evidence was contrary to the weight or sufficiency of the evidence because of the inconsistency of the verdicts for the Appellants also lacks merit. As our Supreme Court has noted, "Consistency in verdicts is not required where there is evidence to support each verdict." ***Commonwealth v. Laird***, 726 A.2d 346, 355 (Pa. 1999). As our sufficiency review above held that the evidence established that both co-defendant parents committed EWOC by permitting the deplorable conditions in their home while their multiple children lived at that residence, the inconsistency of the number of guilty verdicts for EWOC between the Appellants is immaterial for purposes of our review. ***See Commonwealth v. Kimbrough***, 872 A.2d 1244, 1255 (Pa. Super. 2005) (*en banc*) ("It has long been the rule, of course, in Pennsylvania and in the federal courts, that consistency in a verdict in a criminal case is not necessary or required if there is evidence to support each verdict.").

"Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for

allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." ***Commonwealth v. Thomas***, 65 A.3d 939, 944 (Pa. Super. 2013) (citations omitted). Moreover, it is well-settled that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." ***Id.*** (citation omitted). Applying these general principles to the instant case, we cannot disregard the verdicts in this case merely because Appellant Wife was found guilty of one EWOC count while her husband was found guilty of two EWOC counts, where the evidence was effectively sufficient for EWOC counts involving all five of their minor children. ***See Commonwealth v. Campbell***, 651 A.2d 1096, 1100-01 (Pa. 1994) (accepting inconsistent verdicts with respect to co-defendants in a conspiracy case); ***see also Commonwealth v. Muhammad***, 289 A.3d 1078, 1091 (Pa. Super. 2023) ("criminal defendants are already afforded protection against jury irrationality or error by independent review by our Courts of the sufficiency of the evidence") (citation omitted).

In the last claim presented for our review, Appellant Husband alleges, as follows, that the District Attorney for Somerset County – rather than the Assistant District Attorney acting as the trial prosecutor – committed misconduct that warranted the grant of a mistrial:

> During the second day of the trial, Appellant encountered the then-district attorney, Jeffrey Lynn Thomas, in the restroom of the courthouse while the jury was recessed and prior to deliberations. Appellant was approached by Mr. Thomas and was aggressively confronted by him with provoking statements. Appellant also

contends that Mr. Thomas had left his cell phone in the bathroom stall and was filming him while Appellant was verbally practicing his testimony. Appellant felt threatened and as though he was denied a fair trial due to the egregious actions of the district attorney.

Appellant Husband's Brief at 3-4.

This prosecutorial misconduct claim was not addressed in any form during the trial. We note from the trial court's opinion and a sentencing scheduling motion from the Commonwealth that the claim was first raised in court by Appellant Husband's counsel at an initial hearing date scheduled for sentencing on October 28, 2021, at which time Appellant Husband failed to appear in court. Trial Court's Opinion, 7/1/22, 16 (Appellant Husband's case); Motion to Schedule Sentencing, 11/10/21, ¶¶ 3-6 (Appellant Husband's case). Sentencing was then continued in Appellant Husband's absence and a bench warrant was issued for him. Trial Court's Opinion, 7/1/22, 16 (Appellant Husband's case); Motion to Schedule Sentencing, 11/10/21, ¶ 7 (Appellant Husband's case). The trial prosecutor later informed the court that the Somerset Borough Police Department had engaged in an investigation on October 5-6, 2021, with respect to the misconduct claim, and that investigation was not going to result in further action by the police. *Id.* at ¶¶ 10-12. The trial prosecutor asserted that she had no knowledge of Appellant Husband's allegations concerning the District Attorney or the existence of the police investigation prior to October 28, 2021. *Id.* at ¶ 15.

The trial prosecutor notified the trial court that the misconduct allegations raised by Appellant Husband were not reported to the police until

October 5, 2021 (which was two weeks after the District Attorney had been arrested and charged in connection with an unrelated case), and that it was the Commonwealth's position that Appellant Husband "intentionally fabricated" his allegations about the District Attorney "to avoid sentencing" and, even assuming *arguendo* that the allegations were true, they had "no bearing on the underlying convictions" or the trial prosecution. Motion to Schedule Sentencing, 11/10/21, ¶¶ 16-17 (Appellant Husband's case).

At sentencing, Appellant Husband's counsel addressed the prosecutorial misconduct claim as follows:

> Thank you Your Honor. Mr. Barkman does appear before Your Honor for sentencing; and I'm sure the Court recalls that at the time and place for his sentencing, original scheduling, we had addressed the issue of some conduct of the former District Attorney Thomas relating to this particular trial; and because Mr. Barkman wasn't present, I do just want to confirm on the record, for Mr. Barkman's benefit, that that issue was brought before the Court; and subsequently, there have been some filings on it; but, ultimately, it is my understanding at this point that despite that, the Court is prepared to sentence Mr. Barkman today. But I did tell him that I would raise this on the record so that he knew that it had been previously raised by me when he was not present.

N.T. 12/2/21, 4-5 (Appellant Husband's case).

While there no ruling made of record on the prosecutorial misconduct at the sentencing hearing, the trial court explains in its opinion that the claim should have been denied for lack of development by Appellant Husband:

> Appellant[ Husband] simply asserts that, without argument or any development, the former District Attorney's conduct "caused him to be intimidated." [Rule 1925(b) Statement, 5/25/22, ¶ 4(l).] Appellant[ Husband] has failed to set forth any evidence that his

right to a fair trial, or any other constitutional right, was compromised. Notably, Appellant[ Husband] has not alleged in his Concise Statement that he was intimidated to such a degree that it caused him to not testify. We fail to see how this alleged misconduct might have otherwise affected Appellant[ Husband]'s right to a fair trial. For the foregoing reasons, we suggest that this Court did not err in sentencing Appellant[ Husband] in the instant case.

Trial Court Opinion, 7/1/22, 18 (Appellant Husband's case) (bold emphasis omitted).

As an initial matter, Appellant Husband waived this claim by not raising it before the trial court in a timely manner that would have allowed the court to inquire into the basis for the claim and permit the court to take any remedial action. Our Supreme Court has held that in order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must raise a contemporaneous objection before the trial court, and then request either a mistrial or curative instructions. *See Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008) (holding that Powell waived a prosecutorial misconduct claim concerning the Commonwealth's closing argument by not making a contemporaneous objection). Here, the claim was not raised until it was addressed by trial counsel at the initial hearing scheduled for sentencing in the absence of Appellant Husband. Accordingly, the claim is waived. *See Commonwealth v. Spotz*, 18 A.3d 244, 277-78 (Pa. 2011) (holding that Spotz waived a prosecutor misconduct claim concerning guilty phase closing arguments by not making a contemporaneous objection). As the alleged misconduct supposedly occurred in Appellant Husband's presence, this is not

a case where the prosecutorial misconduct at issue had only been discovered after the fact, in which case it would be unreasonable to expect a contemporaneous objection. *See* Pa.R.Crim.P. 605(B) ("When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motions *shall* be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.") (emphasis added).

Even assuming that Appellant Husband did not waive this claim, the meager development of the claim in the certified record does not permit us to conduct meaningful review. We can infer from the limited argument in Appellant Husband's brief that he is suggesting that the alleged misconduct improperly caused him to decline to testify, but Appellant Husband makes no cogent arguments to that effect. He fails to cite any caselaw in support of his claim and, in the absence of any fact finding as to the claim below, he does not proffer adequate information concerning the allegations of misconduct that would allow us to consider whether any violation of constitutional rights had occurred in this case. While Appellant Husband asserts that the District Attorney made "provoking statements" to him, Appellant Husband's Brief at 4, nowhere in the record is there even a suggestion as to the content of the statements that were supposedly made. Even presuming that the events happened as Appellant Husband alleges that they occurred, Appellant Husband also fails to address how any proposed testimony from him would have differed from the testimony offered by his wife, and thus demonstrate

that he was prejudiced by a supposed absence of his testimony. If Appellant Husband's prosecutorial misconduct claim was not already waived for lack of timely preservation, it would also be waived for lack of development on appeal. *See Commonwealth v. Miller*, 721 A.2d 1121, 1124 (Pa. Super. 1998) ("We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.") (citations omitted); *see also Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa. Super. 2006) ("An appellant brief must provide citations to the record and to any relevant supporting authority … Failing to provide factual background and citation to the record represent serious deviations from the briefing requirements of the Rules of Appellate Procedure.") (citations and footnote omitted).

We hold that the Appellants' claims concerning the sufficiency of the evidence and the consistency of their verdicts are denied for lack of merit. Appellant Wife waived her appellate challenge to the weight of the evidence. To the extent that Appellant Husband joins his wife's weight claim based on his preserved post-sentence weight claim, that claim lacks merit. Appellant Husband's prosecutorial misconduct claim is waived for lack of timely preservation and development.

Judgments of sentence affirmed.

J-S36041-22
J-S36042-22

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/19/2023