J-S12023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL SHAMONDRAY CHAVIS | : | |
| | : | |
| Appellant | : | No. 1155 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 7, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004829-2019

BEFORE:    KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED: AUGUST 23, 2023**

Jamal Shamondray Chavis[1] (Appellant) appeals from the judgment of

sentence entered in the Dauphin County Court of Common Pleas, following a

jury trial where he was convicted of robbery/serious bodily injury but found

not guilty of aggravated assault.[2]  Appellant challenges both the weight and

sufficiency of the evidence for robbery, arguing: (1) his acquittal of

aggravated assault precluded a finding of serious bodily injury; and (2) the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant is identified as Jamal Shamondray Chavis on his court documents,
but he testified at sentencing that Shamondray is his first name.  **See** N.T.
Sentencing, 5/7/21, at 2.

[2] **See** 18 Pa.C.S. §§ 3701(a)(1)(i), 2702(a)(1), respectively.

Commonwealth failed to show he used force in taking the unconscious victim's possessions. We affirm.

## I. Facts and Procedural History

We glean the following evidence presented by the Commonwealth from the notes of testimony of Appellant's jury trial. In the early morning hours of August 31, 2019, Appellant had been dropped off near his apartment on Scott Street, Harrisburg. *See* N.T. Jury Trial, 3/8-10/21, at 151-53. Meanwhile, the victim, Jermaine Beason (Victim), and his wife, Eboni Beason, both intoxicated, were driving home. *See id.* at 19, 43-44. Eboni testified at trial that they were lost, and Victim stopped the vehicle on the side of the road upon realizing he was too intoxicated to drive. *Id.* at 32-33. Victim stepped outside the parked car to walk over to his wife's side when the couple heard Appellant say, "What the [f]uck are you looking at?," and observed him approaching the car. *Id.* at 19. Appellant and the Beasons did not know each other. *See id.* at 153, 161.

Victim testified Appellant walked toward them and was "argumentative," and Victim told Eboni "to run." N.T. Jury Trial at 45. Victim stated the next thing he remembered was waking up in the hospital in severe pain the following morning. *See id.* at 46-47. Dan Galvan, M.D., a trauma surgeon at Penn State Holy Spirit Hospital, testified Victim suffered two orbital fractures, which required a transfer to another hospital for specialized

intervention. *See id.* at 126. Victim stated he continued treatment for his injuries for about two months. *See id.* at 48-49.

Meanwhile, Eboni testified that upon seeing Appellant nearing the car, she fled on foot just before he and Victim "were going to interact with each other." N.T. Jury Trial at 21. She flagged down two police officers on patrol nearby. *Id.* at 23. They replied they were responding to another call and could not "stay." *Id.* at 24. Shortly thereafter, Eboni's mother arrived to pick her up, and they later followed Victim to the hospital. *See id.* at 24-25.

Commonwealth witness Connor Mullins, a rideshare driver, testified to the following. He was helping an elderly passenger to her front door when he "heard some shouting at the intersection [ ] of Scott and Magnolia." N.T. Jury Trial at 74, 78. Mullins saw a "fight broke out" and Appellant "knock[ed] out" Victim.[3] *Id.* at 79. Mullins witnessed Appellant "kicking [Victim] on the ground, maybe punching [Victim]," all while Victim appeared to be "knocked out cold." *Id.* at 82. Mullins then observed Appellant "reaching into [Victim]'s pants pocket and pulling something out" while Victim lay motionless. *Id.* at 81. Four to five minutes later, as Mullins drove away, he could see Appellant "dragging [Victim's] body up [from the middle of] the intersection onto the

---

[3] Throughout his testimony, Mullins referred to Appellant and Victim by the color of the shirts they were wearing – Victim in a gray shirt and Appellant in a white shirt. *See* N.T. Jury Trial at 78. Officer Restrepo testified "[t]he man in the white shirt was" Appellant. *Id.* at 103.

curb[.]" *Id.* at 79, 84. Mullins informed two officers near the intersection that "there's a guy getting beat up down there[.]" *Id.* at 85.

Harrisburg City Police Officers Esteban Restrepo and Carson O'Connor, in separate patrol vehicles, were the same officers both Eboni and Mullins had approached earlier that evening. N.T. Jury Trial at 67, 100-01. They arrived together at the scene of the incident. *See id* at 67. Officer Restrepo testified he observed Victim lying on his back, appearing to be "completely unconscious," and Appellant "standing over him," attempting to remove Victim's pants. *Id.* at 102. Officer O'Connor similarly testified Victim appeared to be unconscious and unresponsive and "might have some sort of head trauma[.]" *Id.* at 70. Appellant "was standing over [ ] the victim [with] the victim . . . between [Appellant's] legs." *Id.*

Officer Restrepo arrested Appellant and conducted a search incident to arrest. N.T. Jury Trial at 104-05. They retrieved keys from Appellant's right pocket and a wallet containing Victim's identification from Appellant's left pocket. *Id.* at 106. Officer Restrepo pressed a button on the key fob which activated the lights on the Beasons' parked car. *Id.* at 106-07. Officer Restrepo also testified that after conducting the search, "without being questioned, [Appellant] yelled out, 'Yeah, that's his shit. I took it.'" *Id.* at 108.

Appellant was charged with one count each of aggravated assault and robbery/serious bodily injury. A jury trial commenced on March 8, 2021.

The Commonwealth presented the testimony of, *inter alia*, Victim, Eboni, Officers O'Connor and Restrepo, Mullins, and Dr. Galvan, as summarized above. While cross-examining Appellant, the Commonwealth also played recorded telephone calls Appellant made from Dauphin County Prison to his then-fiancée, Ashley Franklin, as well as his girlfriend, Sharon Arnold, about the incident and charges.[4] **See** N.T. Jury Trial at 167-84. After the Commonwealth played one call with Franklin, Appellant admitted he did not mention acting in self-defense, but did agree he told her, "I beat the shit out of some N word [sic] right out in front of your building." **Id.** at 173-74. When asked whether he stated to Arnold on another prison telephone call that he "would fuck [Victim] up again," Appellant responded, "I probably said I would, but I'm not sure." **Id.** at 182.

Appellant testified in his own defense to the following. He had been drinking alcohol at Franklin's house in the hours before the incident. **See** N.T. Jury Trial at 158. Victim approached him, asked for a cigarette, and had an "attitude problem" when Appellant offered one that he had already began smoking. **Id.** Appellant contended Victim threw the first punch and he acted in self-defense. **Id.** at 153, 171. Appellant denied kicking or punching then-unconscious Victim as well as reaching into Victim's pockets, explaining he

_____

[4] The notes of testimony of trial do not include a transcription of the prison telephone calls.

merely got close to Victim's body as he was gathering his own possessions and "noticed some of [his] belongings were under [Victim]." *Id.* at 156.

On March 10, 2021, the jury returned a guilty verdict for the robbery charge, but found Appellant not guilty of the aggravated assault charge. On May 7, 2021, the trial court sentenced Appellant to 120 to 240 months' imprisonment for the robbery charge and imposed $2,500 of restitution.[5]

Appellant filed a timely post-sentence motion, challenging the weight of the evidence. It was denied on August 13, 2021.

Appellant did not file a direct appeal, but filed a timely, counseled petition pursuant to the Post Conviction Relief Act[6] (PCRA) on May 5, 2022, for the reinstatement of his direct appeal rights *nunc pro tunc*. The trial court granted this unopposed petition on July 6, 2022.

Appellant then filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a statement in *lieu* of a Pa.R.A.P. 1925(a) opinion, suggesting that Appellant has waived his issues on appeal, due to his failure to request a

_____

[5] The Commonwealth noted at sentencing that due to Appellant's 2010 felony burglary conviction in Virginia, the present robbery conviction would be treated as a "second strike crime of violence" and warrant a 10-year mandatory minimum sentence. N.T. Sentencing at 3. The trial court addressed the mandatory minimum and remarked that "sending [him] to prison for 10 to 20 years is a real waste." *Id.* at 21.

[6] *See* 42 Pa.C.S. §§ 9541-9545.

transcript of the trial and "provide an adequate certified record for appellate review." Trial Court Statement in *Lieu* of Pa.R.A.P. 1925 Opinion, 10/19/22, at 2-3 (Trial Ct. Statement). We note the record transmitted on appeal does include the March 3-10, 2021, trial transcript. The Commonwealth suggests we "remand to the trial court for purposes of a Pa.R.A.P. 1925(a) Opinion." Commonwealth's Brief at 4.

## II. Statement of Issues on Appeal

Appellant raises the following issues on appeal:

1. The evidence presented was insufficient to prove the crime of robbery beyond a reasonable doubt; There was not proof beyond a reasonable doubt of serious bodily injury, and the evidence established that the victim was unconscious and unaware that the appellant rolled the victim over to take his wallet and robbery cannot be committed upon an unconscious voluntarily intoxicated victim because such a victim is unaware of the taking and no force is necessary to compel him to part with conscious control of his property to the thief, and thus at best, this criminal act constitutes theft rather than robbery.

2. The verdict was against the weight of the evidence especially where the evidence presented by the Commonwealth did not prove the crime of robbery; There was not proof beyond a reasonable doubt of serious bodily injury, and the evidence established that the victim was unconscious and unaware that the appellant rolled the victim over to take his wallet and robbery cannot be committed upon an unconscious voluntarily intoxicated victim because such a victim is unaware of the taking and no force is necessary to compel him to part with conscious control of his property to the thief and thus, at best this criminal act constitutes theft rather than robbery.

Appellant's Brief at 6.

## III. Serious Bodily Injury

In his first issue, Appellant challenges both the weight and sufficiency of his robbery conviction, on the grounds that his acquittal of aggravated assault precluded a finding of serious bodily injury. Appellant contends, in sum, "there was no direct evidence presented at trial that indicate[d] a serious bodily injury was inflicted upon [Victim,] especially as the jury decided Appellant was not guilty of the [a]ggravated [a]ssault charge[.]" Appellant's Brief at 11.

We first note Appellant conflates the weight and sufficiency of the evidence, offering identical reasoning for both his weight and sufficiency claims. The difference between weight and sufficiency challenges is well-settled:

> The distinction between these two challenges is critical. . . .
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> **A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.** Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the

discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (citations & quotations omitted, emphasis added).

Appellant's contention, that his jury acquittal of aggravated assault prevents a finding of serious bodily injury with respect to the robbery charge, goes to the weight of the evidence. Appellant relies on a perceived contradiction between the jury's finding that he was not guilty of aggravated assault, yet guilty of inflicting serious bodily injury in the context of robbery. Therefore, we will address Appellant's first challenge as a weight claim and not a sufficiency claim.[7]

---

[7] In order to raise a weight claim on appeal, a defendant must "preserve[ it] by a motion for a new trial. . .  (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022), *quoting* Pa.R.Crim.P. 607(A)(1)-(3).

Here, Appellant preserved the claim by raising it in a timely post-sentence motion, stating "[t]he verdict is against the weight of the evidence as . . . it pertains to the Robbery conviction; it is clear that the Commonwealth, at best submitted sufficient evidence of **Theft** . . . ."  Appellant's Post-Sentence Motion, 5/18/21, at ¶ 14 (emphasis in original).

Our standard of review for a weight claim rests on whether the trial court committed an abuse of discretion when weighing the evidence at trial, "not [ ] the underlying question of whether the verdict is against the weight of the evidence." *Juray*, 275 A.3d at 1047 (citation omitted). "[W]e are not to disturb the jury's verdict unless the weight of the evidence is 'so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.'" *Id.* at 1045. A weight claim may not succeed except where "the evidence [is] so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Id.* at 1047 (citation omitted).

As stated above, Appellant was convicted of robbery/serious bodily injury under 18 Pa.C.S. § 3701(a)(1)(i), which provides: "A person is guilty of robbery if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another[.]" *See* 18 Pa.C.S. § 3701(a)(1)(i). Appellant was also charged with aggravated assault under subsection 2702(a)(1),[8] which includes the element of attempting to cause or causing serious bodily injury to another, but found not guilty. "Serious bodily injury is defined as [b]odily injury which creates a substantial risk of death or which causes serious,

_____

[8] *See* 18 Pa.C.S. § 2702(a)(1) ("A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]").

- 10 -

permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Commonwealth v. Burton***, 2 A.3d 598, 601 (Pa. Super. 2010) (*en banc*), *quoting* 18 Pa.C.S. § 2301 (a defendant inflicted serious bodily injury by delivering a single blow, resulting in the victim's loss of consciousness and traumatic head and brain injuries). ***See also Commonwealth v. Patrick***, 933 A.2d 1043, 1046 (Pa. Super. 2007) (*en banc*) (finding serious bodily injury where a defendant delivered a "sucker" punch to the victim's head, causing the victim to fall unconscious and "strike his head on the concrete").

The Pennsylvania Supreme Court has held "[c]onsistency in [jury] verdicts is not required where there is evidence to support each verdict." ***Commonwealth v. Barkman,*** 295 A.3d 721, 738 (Pa. Super. 2023) (citation & quotation omitted). Furthermore, "juries may issue inconsistent verdicts and [ ] reviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit a defendant of a certain offense." ***Commonwealth v. Moore***, 103 A.3d 1240, 1249 (Pa. 2014).

Appellant's acquittal of aggravated assault, alone, does not preclude a finding, with respect to the robbery charge, that he did not cause serious bodily injury to the victim. ***See Moore***, 103 A.3d at 1250 (holding a defendant's conviction of possession of an instrument of a crime (PIC) was not invalidated by his acquittals of murder and attempted murder charges, even though the verdicts may be "logically inconsistent"). Moreover,

Appellant's argument, that there was "no direct evidence" of serious bodily injury, fails because there was considerable undisputed direct evidence of Victim's injuries and the actions Appellant took to inflict them. *See* Appellant's Brief at 11.

Furthermore, in its order denying Appellant's post-sentence motion, the trial court found Appellant's "actions in this case were the cause of the unconscious state of the victim[.]" Court Order, 8/13/21. We agree.

Here, there was significant evidence to support a finding of serious bodily injury. The Commonwealth presented the testimony of six witnesses, among them: the Victim, who recounted the initial altercation and described his injuries after the attack; Mullins, who observed Appellant punching Victim, "knocking [Victim] out;" Officers Restrepo and O'Connor, who responded at the scene and observed Victim was unconscious and appeared to have "head trauma;" and Dr. Galvan, who treated Victim and described his two orbital fractures, which were severe enough to require a transfer to another hospital for treatment. N.T. Jury Trial at 70, 79, 104. Additionally, Appellant admitted himself both at trial and on appeal that he "hit [Victim] once, maybe twice," rendering him unconscious. *Id.* at 155, 126; *see also* Appellant's Brief at 12 (stating that the altercation "led to [Victim] being knocked unconscious by Appellant").

Therefore, we find no abuse of discretion by the trial court in denying Appellant's post-sentence motion to vacate his sentence.

**IV. Robbery & Use of Force**

In his second issue, Appellant alleges the Commonwealth failed to prove use of force, due to the unconscious state of Victim.  He states there was no direct evidence Victim "had been consciously aware of any force."  Appellant's Brief at 11.  Appellant further avers that there was no "factual basis" for robbery other than the fact that he "removed property from the unconscious victim," and there was no evidence of force or physical threat "during the actual taking" of the victim's keys and wallet.  *Id.* at 13.  Appellant extensively discusses *Commonwealth v. Williams*, 550 A.2d 579 (Pa. Super. 1988), where the Superior Court held that rolling over an already unconscious person to remove his wallet did not rise to the level of "force however slight" for robbery under Subsection 3701(a)(1)(v).  *See* Appellant's Brief at 13, 16-17; *Williams*, 550 A.2d 579 (Pa. Super. 1988).  Appellant also discusses several related cases, including *Commonwealth v. Bedell*, 954 A.2d 1209 (Pa. Super. 2018),  *Commonwealth v. Windell*, 529 A.2d 1115 (Pa. Super. 1987), and *Commonwealth v. Smith*, 481 A.2d 1352 (Pa. Super. 1984).  Appellant thus concludes that at best, the Commonwealth established the elements of theft, but not robbery.  Appellant's Brief at 19.

We note that in *Williams*, the issue, whether the defendant applied sufficient force on an unconscious victim established the elements of robbery,

was treated as a sufficiency claim. **Williams**, 550 A.2d at 580. Accordingly, we will address Appellant's second challenge as a sufficiency claim.[9]

Our standard of review for a challenge of insufficient evidence is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. . . The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

**Juray**, 275 A.3d at 1042 (citations omitted).

As discussed above, "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Widmer**, 744 A.2d at 751.

We reiterate the elements of Appellant's robbery charge under Subsection 3701(a)(1)**(i)** include only that a person "inflicts serious bodily injury" while "committing a theft." **See** 18 Pa.C.S. § 3701(a)(1)(i). However, the cases Appellant relies upon — **Williams**, **Bedell**, **Smith**, and **Windell** — all relate to the use of force with regard to a Subsection 3701(a)(1)**(v)** charge of robbery. Subsection 3701(a)(1)**(v)** includes the element of "force however

---

[9] A claim challenging the sufficiency of the evidence may be raised at any time, including on appeal. Pa.R.Crim.P. 606(a)(7).

- 14 -

slight." 18 Pa.C.S. § 3701(a)(1)(v). The use of force was **not** an element in Appellant's Subsection 3701(a)(1)(**i**) charge of robbery. Thus, Appellant's present case is distinguishable from the cases he relies upon, and his arguments regarding the element of the use of force is mistaken. ***See*** 18 Pa.C.S. § 3701(a)(1)(v). It is not relevant whether the Commonwealth presented evidence that Appellant used force, regardless of whether Victim was unconscious. Accordingly, we find his claims regarding force are meritless, and no relief is due.

### V. Trial Court's Suggestion of Quashal

Finally, we consider the trial court's suggestion that all of Appellant's issues should be found waived, and this Court should quash this appeal, on the grounds he failed to request a copy of the trial transcript, and thus precluded the court from composing a meaningful opinion. ***See*** Trial Ct. Statement at 2. ***See also*** Commonwealth's Brief at 4 (suggesting remand for trial court to prepare Pa.R.A.P. 1925(a) opinion).

We acknowledge, as the trial court correctly pointed out, that an appellant bears the burden of ensuring the record is complete and includes the materials necessary for appellate review. ***See*** Trial Ct. Statement at 2, citing ***Commonwealth v. Bongiorno***, 905 A.2d 998, 1000 (Pa. Super. 2006) (*en banc*). Furthermore, when presented with a weight of the evidence claim on appeal, our proper review is of the trial court's reasons for denying relief,

rather than the "the underlying question of whether the verdict is against the weight of the evidence." *See Juray*, 275 A.3d at 1047.

Nevertheless, as stated above, the trial transcript has been included in the certified record and has been reviewed by this panel in our review. We determine that in this particular appeal — where again, Appellant's legal arguments are that: (1) his jury acquittal of another charge precluded a finding of serious bodily injury under his robbery charge; and (2) the Commonwealth did not establish an element, which was not included in his robbery charge anyway — we are able to dispose of Appellant's claims.[10] We thus decline to quash this appeal or remand for a supplemental trial court opinion.

_____

[10] "[T]his Court may affirm the decision of the trial court on any basis." *Commonwealth v. Crosley*, 180 A.3d 761, 770 (Pa. Super. 2018) (citation omitted).

## VI. Conclusion

For the foregoing reasons, we conclude no relief is due on Appellant's weight and sufficiency challenges to his robbery conviction.

Judgment of sentence affirmed.

Judge Colins joins the Memorandum.

Judge Kunselman Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2023