J-S29012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
JULIUS LEONDUS WILCOX :
:
Appellant : No. 1293 MDA 2022

Appeal from the Judgment of Sentence Entered September 8, 2022
In the Court of Common Pleas of Schuylkill County
Criminal Division at CP-54-CR-0000355-2022

BEFORE:   MURRAY, J., KING, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                **FILED: OCTOBER 10, 2023**

Julius Leondus Wilcox (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of eight counts of indecent exposure and one count of open lewdness, and the trial court convicted him of eight counts of summary harassment.[1]  After review, we affirm.

As the trial court explained,

[a]t trial, testimony was presented by four Corrections Officers, four nurses, and a psychological services specialist[,] who were all employed by State Correctional Institute Frackville [(SCI-Frackville) while [Appellant] was an inmate there.  They all provided similar testimony that on numerous occasions between March 2020 and December 2021, [Appellant] would expose himself by pulling his penis out of his jumpsuit and placing it in

_____

* Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3127(a), 5901, 2709(a)(3).

the wicket[2] of his jail cell while the nurses and Correctional Officers attempted to administer his medication. On one occasion, [Appellant] requested the presence of Siena Smith [(Ms. Smith)], a psychological services specialist at the prison, to ask her about something. When she walked over to his cell, he was masturbating.

Trial Court Opinion, 10/18/22, at 2 (footnote added).

A jury convicted Appellant of the aforementioned offenses. On September 8, 2022, the trial court sentenced Appellant to an aggregate two to four years in prison, concurrent to the sentence he was serving. Appellant timely filed a *pro se* notice of appeal, although his attorney, Hank Clark, Esquire, had not withdrawn from representation. The trial court sent Appellant, rather than Attorney Clark, an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Appellant *pro se* filed an untimely concise statement. In addition, Appellant failed to order necessary transcripts.

The Superior Court Prothonotary subsequently identified Attorney Clark as Appellant's counsel and sent him a docketing statement. When Attorney Clark failed to complete and file the docketing statement, we remanded the case for the trial court to hold a hearing and determine whether Attorney Clark had abandoned Appellant. On remand, the trial court found Attorney Clark had mistakenly believed Appellant did not want counsel. The trial court

_____

[2] Corrections Officer Steven Reno (Officer Reno) explained that a "wicket" is "a locked device on a cell door that we have a key to open to access inside that door." N.T., 6/23/22, at 22.

requested remand of the record for Attorney Clark to file an amended Pa.R.A.P. 1925(b) concise statement. This Court denied the request without prejudice to Appellant to seek relief under Pa.R.A.P. 1925(b)(2)(i).[3]

Attorney Clark filed an application for leave to file an amended concise statement. On February 24, 2023, the trial court granted the application and requested remand from this Court. On March 3, 2023, this Court remanded the record and directed the filing of a supplemental trial court opinion. Order, 3/3/23. On April 6, 2023, the trial court entered an order advising that its opinion filed October 18, 2022, and its supplemental opinion filed October 27, 2022, addressed the issues raised in Appellant's amended concise statement. *See* Trial Court Order, 4/6/23. Appellant's issues are now properly before us.

Appellant presents three issues:

(1)    Whether the Commonwealth failed to prove every element of indecent exposure beyond a reasonable doubt and was therefore, insufficient to support Appellant's conviction. Specifically, whether the evidence presented was insufficient to prove that Appellant exposed his genitals in a place where there were other people present where, under the circumstances, Appellant knew or should have known that his conduct was likely to offend, affront, or alarm.

(2)    Whether the jury's verdict of guilty was against the weight of the evidence.

(3)    Whether failure by the Pennsylvania Department of Corrections to disclose certain reports and video footage of the alleged incidents violated Appellant's constitutional rights and the Commonwealth's obligations for mandatory

---

[3] Rule 1925(b)(2)(i) permits the trial court to authorize the filing of an amended concise statement upon application and for good cause shown.

disclosure under Pennsylvania Rule of Criminal Procedure 573(B), and therefore necessitates a new trial.

Appellant's Brief at 5 (some capitalization modified).

Appellant first challenges the sufficiency of the evidence underlying his convictions of indecent exposure. *Id.* at 9. Appellant does not dispute that he repeatedly exposed his genitals, and that a state correctional institute is a public place. *Id.* Rather, he claims the Commonwealth failed to prove he exposed himself

> in a place where other people were present and under circumstances [that Appellant] knew or should have known that the exposure was likely to offend, affront, or alarm those people.

*Id.* According to Appellant, the alleged victims were "either highly educated and skilled medical professionals or highly trained and experienced corrections officers." *Id.* Appellant points out that Erin Thiroway (Nurse Thiroway) has 20 years' experience as a licensed practical nurse and has been employed at SCI-Frackville for over a decade. *Id.* Before that, Nurse Thiroway conducted countless physical examinations of naked men, and "observed many penises before." *Id.*

Similarly, Appellant claims other alleged victims, Nurses Michelle Delpais (Nurse Delpais), Amber Stahler (Nurse Stahler), and Amanda Turner (Nurse Turner), previously conducted medical assessments where they were exposed to naked men. *Id* at 10. According to Appellant, "[b]y the very nature of their profession, nurses are going to be exposed to naked men." *Id.*

Appellant asserts the alleged victims were not "offended" or "alarmed," but embarrassed, uncomfortable, and degraded. *Id.*

Appellant further argues that another victim, Ms. Siana Smith, knew of Appellant's penchant for displaying his penis and was prepared when she approached his cell. *Id.* at 11. Appellant argues,

> the standard is not how the alleged victims actually felt, but whether Appellant knew or should have known that his exposure was likely to make them feel that way. In this regard, the Commonwealth did not present any evidence to suggest what Appellant knew or should have known….

*Id.*

Appellant's "claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, … the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. **The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.** Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014)

(emphasis added; citation omitted).

> A person commits indecent exposure
>
> if that person exposes his or her genitals in any public place or in any place where there are present other persons **under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm**.

18 Pa.C.S.A. § 3127(a) (emphasis added).

At trial, Officer Reno testified that at around 7:00 p.m. on March 7, 2020, he approached Appellant's cell to deliver medication. N.T., 6/23/22, at 19. Nurse Thiroway accompanied Officer Reno. ***Id.*** According to Officer Reno,

> when we get to the cell, we [have] to tell the inmates to turn both their lights on, **be fully dressed**, and stand about a foot to two foot [*sic*] from the door … [w]ith their hands up.

***Id.*** at 21 (emphasis added). When Officer Reno and Nurse Thiroway arrived at Appellant's cell, Officer Reno "opened the wicket to give [Appellant] his medication." ***Id.*** at 22. Appellant received his medication, then "pulled his penis out and placed it outside the wicket." ***Id.*** Nurse Thiroway testified,

> I was very embarrassed. I was offended. It was kind of like an element of surprise for me. I didn't expect that because when he had first come to the cell door, … he was fully clothed. Nothing was showing. And just in that split second, when I went to get his medications from my tray, I looked back and there was his penis right in my full view.

***Id.*** at 33.

During cross-examination, Appellant's counsel asked Nurse Thiroway:

Q.      So seeing an inmate's penis really isn't that big a deal to a nurse, is it?

A.      Yes, it is.

….

I was not there to examine his penis. I was there to give him medications. There was no need for him to show me his penis at that time. …

He did not tell me he had any issues with his penis at that time. So why would I need to see it?

*Id.* at 36. Nurse Thiroway confirmed Appellant's conduct bothered her, emphasizing: "[It] was the element of surprise." *Id.* at 37.

Nurse Emily Zaremba testified that she distributed medication to Appellant on April 30, 2020, at 8:00 p.m., when Appellant exposed himself to the corrections officer through the wicket. *Id.* at 39-40. Nurse Zaremba testified that she did not see Appellant's penis at the time. *Id.*

Corrections Officer Ryan Morris (Officer Morris) testified that on April 30, 2020, he accompanied Nurse Zaremba to Appellant's cell. *Id.* at 42. He confirmed that as he opened the wicket, Appellant "takes the medication, [and] gives the cup back. Then he pulled his penis out of his pants." *Id.* at 44.

Officer Morris described a similar incident that occurred on February 28, 2021. *Id.* at 45-46. During the incident, Officer Morris and a nurse were inside Appellant's cell to check his blood pressure. *Id.* at 47. While the nurse took Appellant's blood pressure, Appellant pulled out his penis. *Id.* at 48.

Officer Morris testified he felt "shocked" and "alarmed."[4] *Id.* at 49. Officer Morris testified that a prior incident had occurred on December 15, 2020, when Officer Morris felt "[t]he same way." *Id.*

Registered Nurse Delpais testified that on December 15, 2020, she was delivering medications at around 7:30 p.m. when Appellant "exposed himself." *Id.* at 56. She explained:

> [Appellant] was standing at his cell door and the wicket was opened. And I placed the medication … on the wicket….
>
> [Appellant] exposed himself as I was placing the medication on the wicket.
>
> ….
>
> That means, he was reaching for his penis and pulled it out of his jumpsuit.

*Id.* at 57-58. According to Nurse Delpais, a similar incident took place on February 28, 2021. *Id.* at 58. At that time, she was checking Appellant's blood pressure through the wicket when Appellant "exposed his penis and had his hand on his penis." *Id.* at 59. Nurse Delpais stated, "It made me very uncomfortable. I was uneasy. I was offended. I was degraded. I was uncomfortable." *Id.*

A few months later, at around 5:15 a.m. on May 20, 2021, Nurse Delpais delivered medications to Appellant. *Id.* at 60. Once again, Appellant "reached through his jumpsuit and pulled out his penis." *Id.* at 61. Nurse Delpais

---

[4] Officer Morris called the shift commander to report the incidents. *Id.* at 46.

repeated that Appellant's actions made her feel "uncomfortable and degraded, offended." *Id.*

Corrections Officer Jarod Eberts (Officer Eberts) testified that on May 20, 2021, at around 5:15 a.m., he accompanied Nurse Delpais to deliver medications. *Id.* at 68. He confirmed that as they delivered the medication, Appellant "flashed us out his wicket[.]" *Id.* Officer Eberts stated, "I was shocked and kind of insulted at the same time. … Because it's not something that typically happens when you're giving medication out." *Id.* at 70.

Registered Nurse Amanda Taylor (Nurse Taylor) testified that on August 20, 2021, at around 9:40 a.m., she delivered medication to Appellant. *Id.* at 74. Nurse Taylor relayed that Appellant exposed himself "when the wicket was opened to put the meds in, [and Appellant] put his penis up to the wicket." *Id.* at 76. Nurse Taylor "turned [her] head and said, 'We're done.'" *Id.* Nurse Taylor testified that the exposure made her "[u]ncomfortable." *Id.*

SCI-Frackville Sergeant Patrick O'Boyle (Sergeant O'Boyle) testified that on August 20, 2021, at around 9:40 a.m., Appellant displayed his penis to him and Nurse Taylor. *Id.* at 78-79. According to Sergeant O'Boyle, "I told [Appellant] to put it away and I closed the wicket." *Id.* at 79. Sergeant O'Boyle explained: "Well, it startled me at first, you know, just because I wasn't expecting to see it. I was giving out medication, not performing a strip search or anything like that." *Id.* at 79-80.

Nurse Stahler testified that Appellant exposed his penis to her on May 17, 2020. *Id.* at 83. Again, the incident took place when Appellant received medication. *Id.* Nurse Stahler testified the incident made her feel "[u]ncomfortable. There's no need for me to see his penis when we're passing oral medication." *Id.* at 84.

Ms. Smith, the psychological services specialist, testified that she provides mental health treatment to inmates at SCI-Frackville. *Id.* at 85. While Ms. Smith was "doing rounds" on September 28, 2021, Appellant called her to his cell. *Id.* at 86. As Ms. Smith spoke with Appellant, "he turned to the side and had his penis in his hand where he was stroking it up and down." *Id.* Ms. Smith stated:

> I was shocked, obviously. And I told him what he did was very disrespectful and he would be getting a write-up for it, and I walked away from his cell door. …
>
> … I felt disrespected. It's embarrassing. You feel violated. I mean, I didn't ask for this man to perform a sexual act in front of me. He did not have any permission to do that. So … it's very violating.

*Id.* at 87.

The above evidence, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's convictions of indecent exposure. A jury could reasonably infer from the testimony that Appellant knew his actions would "offend, affront or alarm." 18 Pa.C.S.A. § 3127(a). Consequently, Appellant's sufficiency challenge does not merit relief.

Appellant next claims the verdicts are against the weight of the evidence. Appellant's Brief at 13. Again, Appellant claims

> the Commonwealth failed to adequately prove that Appellant knew or should have known that his actions would likely cause highly trained medical profession[als] and experienced corrections officer to become offended, affronted, or alarmed….

*Id.* Appellant asserts:

> None of the testimony elicited indicated that seeing a patient in the buff was abnormal for a nurse or seeking an inmate naked was out of the realm of decency for a corrections officer….

*Id.* at 14.

Our review discloses that Appellant failed to preserve this issue with the trial court. A claim challenging the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A)(1)-(3). Because Appellant failed to present his weight claim before the trial court, it is waived. *See Commonwealth v. Barkman*, 295 A.3d 721, 736 (Pa. Super. 2023) (recognizing that the failure to preserve a weight claim will result in the waiver of that claim on appeal); *see also* Pa.R.A.P. 302(a) (stating issues cannot be raised for the first time on appeal). Thus, Appellant's second issue lacks merit.

Finally, Appellant argues the Commonwealth violated Pa.R.Crim.P. 573(B) by failing to obtain reports and video footage of the incidents from the Pennsylvania Department of Corrections. Appellant's Brief at 14. Appellant

asserts that when Attorney Clark informally inquired about video footage, the discovery clerk indicated it did not exist. *Id.* at 15. Appellant acknowledges that "as a matter of trial strategy," Attorney Clark did not raise this argument at trial. *Id.* Because the issue is raised for the first time on appeal, it is waived. *See* Pa.R.A.P. 302(a). Accordingly, Appellant's third issue does not merit relief. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/10/2023