J-A07041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZAKARY JAMES WALLS | : | |
| | : | |
| Appellant | : | No. 760 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 1, 2022
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000233-2021

BEFORE:   STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: MARCH 6, 2024**

Appellant, Zakary James Walls, appeals from the judgment of sentence entered in the Court of Common Pleas of Union County following his conviction by a jury on the charges of making terroristic threats, simple assault, recklessly endangering another person, and possession of a firearm prohibited.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On October 22, 2021, the Commonwealth filed a ten-count Information charging Appellant with criminal attempt (first-degree murder), aggravated assault, making terroristic threats, simple assault, recklessly endangering another person,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(3), 2705, and 6105(a)(1), respectively.

harassment, criminal mischief, disorderly conduct, criminal trespass, and possession of a firearm prohibited.[2] Appellant filed a pre-trial motion to dismiss the charges, and by order entered on March 21, 2022, the trial court dismissed the charge of criminal trespass. The trial court denied the motion as to all other charges.

On September 20, 2022, Appellant, who was represented by counsel, proceeded to a jury trial at the commencement of which the Commonwealth, without objection, moved to *nol pros* the harassment, criminal mischief, and disorderly conduct charges. N.T., 9/20/22, at 13. The Commonwealth then offered the testimony of Pennsylvania State Police Trooper Nathan Wenzel, who testified that he was on duty on July 18, 2021, when, just after midnight, he was called to an incident at 1277 Bostion Road. *Id.* at 18-19. Upon arriving at the address, Trooper Wenzel saw a burgundy vehicle, later identified as belonging to Thomas Fuller. *Id.* at 21. He noticed that an area close to the roof of the vehicle contained a "large gouge mark," which appeared to be from a shotgun bullet. *Id.* at 22-23. The trooper then noticed an expended 12-gauge shotgun shell lying on the ground near the vehicle. *Id.* at 24-25.

---

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a)(4), 2706(a)(1), 2701(a)(3), 2705, 2709(a)(4), 3304(a)(5), 5503(a)(1), 3503(b.1)(1)(i), and 6105(a)(1), respectively.

Bradley Andrew Kemper testified he has worked at the same company with Appellant, and he thinks of him as "a brother." *Id.* at 29. Mr. Kemper testified he was on Appellant's family's farm at 1926 Pleasant View Road, which is near 1277 Bostion Road, on the day in question. *Id.* at 33-34. He had "just bought a shotgun," and he was shooting at "[w]ater bottles full with water." *Id.* at 30, 34. Mr. Kemper testified Appellant was on the Pleasant View Road farm; however, he was not shooting with Mr. Kemper. *Id.* at 35. When he was done with target practice, Mr. Kemper put the shotgun in his Cadillac. *Id.*

Mr. Kemper indicated that, later that evening, he, Appellant, and Appellant's paramour were "hanging out" in the house on Pleasant View Road. *Id.* At some point, he went to sleep, and he was awoken by Appellant's paramour, who was looking for Appellant. *Id.* at 38. Mr. Kemper went outside, and his shotgun was still in his Cadillac. *Id.* at 39.

Jessica Silvers testified she used to live at 1277 Bostion Road with her now ex-boyfriend, James Lee. *Id.* at 53. Mr. Fuller was Mr. Lee's friend, and on the night in question, Mr. Fuller was visiting Mr. Lee at the house on Bostion Road. *Id.* At around midnight, Mr. Lee went to sleep while Ms. Silvers took a shower. *Id.* at 54. She was unaware of where Mr. Fuller was at this time; however, after she exited the shower, she heard a commotion outside the house. *Id.* She heard a male voice say, "I will wait right here for you to get

back." *Id.* at 55. She then heard a gunshot. *Id.* By the time Ms. Silvers dressed and went outside, the police had arrived on the scene. *Id.* at 56.

Pennsylvania State Trooper Jessica Naschke testified she interviewed Ms. Silvers on July 20, 2021, at 9:00 a.m., and Ms. Silvers reported that, after she heard the shot on July 18, 2021, Mr. Fuller came into the house and said "[Appellant] had shot at him." *Id.* at 109.

Hailey Hardy testified she used to live at 1535 Pleasant View Road, which is located directly across from 1277 Bostion Road. *Id.* at 61. On July 18, 2021, she had friends at her house, and they were outside enjoying a campfire when they "heard some people arguing and a gunshot[.]" *Id.* at 62. She specifically testified she heard a male voice say, "Get the fuck out of here," and then she heard a gunshot. *Id.* She could not identify who was arguing as she did not have a direct view of the encounter. *Id.*

Appellant's sister, Katelynn Walls, testified that, on July 18, 2021, she drove to the family's farm on 1926 Pleasant View Road.[3] Specifically, Ms. Walls picked up Appellant from the farm at approximately 2:15 a.m. and drove him to her house in Milton. *Id.* at 68. Appellant had in his possession at this time a bag of clothes. *Id.* at 69.

_____

[3] Ms. Walls clarified the farm located at 1926 Pleasant View Road belonged to her step-grandfather, John Clemens, who is now deceased. *Id.* at 67. During the time of the incident, Appellant and his paramour were staying at the farm to care for Mr. Clemens, who was sick. *Id.*

Thomas Fuller testified he "considers himself homeless," and on July 18, 2021, he was living in his car. *Id.* at 80. Specifically, Mr. Lee had given him permission to park his car in the driveway at 1277 Bostion Drive, and he was "staying in his car in the driveway." *Id.*

Mr. Fuller testified that, prior to July 18, 2021, he knew Appellant, used to work with him, and thought he was a friend. *Id.* at 81. A few months prior to July 18, 2021, Mr. Fuller was driving by Appellant's step-grandfather's farm, and there was a dog in the middle of the road. *Id.* at 83. He stopped his car, honked the horn, and Appellant came out to get the dog. *Id.* Mr. Fuller and Appellant had a friendly conversation, and their friendship blossomed. *Id.* at 84. Appellant told Mr. Fuller he could park his car on the farm's property, and Mr. Fuller did so "off and on probably about a month." *Id.* During this time, Appellant gave Mr. Fuller permission to be "affectionate with his girl," who was living at the farm. *Id.* at 85.

At some point, Appellant and his paramour had difficulties in their relationship, and Mr. Fuller began a romantic relationship with Appellant's paramour. *Id.* When Appellant's paramour told Appellant that "she had fallen in love with [Mr. Fuller]," Appellant was "disappointed and hurt." *Id.* at 86. Appellant asked Mr. Fuller to "back down from the relationship" because Appellant and his paramour were going to try to "work stuff out." *Id.*

Thereafter, on July 18, 2021, Mr. Fuller was in his car in Mr. Lee's driveway, and he was texting Appellant's paramour at around 11:00 p.m. or

midnight. *Id.* at 88. "Next thing [he knew he] heard a tap on [his car] window like…three knocks. And when [he] looked over, there was a shotgun up against [his car] window; so [he] put [his] hands up against the window near the shotgun." *Id.* at 89. He clarified the car window was slightly rolled down, and the shotgun was pointed directly at him. *Id.* at 90. Mr. Fuller recognized Appellant as the person holding the shotgun, and Appellant told him the "gun was loaded." *Id.* Appellant told Mr. Fuller that he "needed to leave [Appellant's paramour] alone and get out of town or he's going to kill him." *Id.* at 91. As Mr. Fuller moved and ducked his head, Appellant continued to point the gun at Mr. Fuller's head. *Id.* Appellant opened the car door "a little bit," and Mr. Fuller said, "okay." *Id.* at 93. Appellant then started walking away from Mr. Fuller with the shotgun aimed towards the ground. *Id.* at 93-94.

Mr. Fuller testified he "thought that was it; so [he] looked to see where [Appellant] was at, and he just turned around and shot at [him]." *Id.* at 93. Mr. Fuller clarified that, after Appellant initially walked away, Mr. Fuller opened the car door "about 6 inches" to turn to see where Appellant went, and at this point, Appellant raised the shotgun to his shoulder and fired "just once." *Id.* at 94, 102. At this point, Mr. Fuller, who was "scared," drove off and called the police. *Id.* at 93, 95. Mr. Fuller noted the bullet hit his car "just above the driver door and the windshield." *Id.* at 93. Mr. Fuller testified the entire

encounter with Appellant on July 18, 2021, lasted approximately four minutes. *Id.* at 101.

At the conclusion of the trial, the jury found Appellant not guilty of criminal attempt (first-degree murder) and aggravated assault. However, the jury found Appellant guilty of making terroristic threats, simple assault, recklessly endangering another person, and possession of a firearm prohibited. On December 1, 2022, Appellant, who was still represented by counsel, proceeded to a sentencing hearing, at the conclusion of which the trial court imposed an aggregate sentence of eight years to sixteen years in prison.

Appellant filed a timely, counseled post-sentence motion in which he averred, *inter alia*, the jury's guilty verdicts were against the weight of the evidence. Following a hearing, the trial court denied Appellant's post-sentence motion, and this timely, counseled appeal followed. After receiving notice of the appeal, the trial court issued an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), directing Appellant to file and serve a concise statement of errors complained of on appeal no later than twenty-one days after the date of the order. The docket entry for this order confirms that it was served on Appellant, as well as Appellant's court-appointed counsel on June 19, 2023. Appellant's counsel filed the court-ordered Rule 1925(b) statement on August 25, 2023, raising sufficiency and weight of the evidence

claims. On that same date, the trial court issued a Rule 1925(a) opinion addressing the merits of the issues.[4]

On appeal, Appellant sets forth the following issue in his "Statement of the Question Involved" (verbatim):

> Whether the guilty verdict following Appellant's trial was against the weight of the evidence presented for Count 3 (Terroristic Threats), Count 4 (Simple Assault), Count 5 (Recklessly Endangering Another Person), or Count 10 (Person Not to Possess Firearms)?

Appellant's Brief at 5.

Appellant contends the jury's guilty verdicts as to the charges of making terroristic threats, simple assault, recklessly endangering another person, and possession of a firearm prohibited are against the weight of the evidence.[5]

---

[4] Appellant's counsel filed the court-ordered Rule 1925(b) statement beyond the requisite 21-day period. It is well settled that only issues properly raised in a timely Rule 1925(b) statement are preserved for appellate review. **See** Pa.R.A.P. 1925(b)(4)(vii). However, this Court has held that "[i]f there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." **Commonwealth v. Burton**, 973 A2d 428, 433 (Pa.Super. 2009) (*en banc*). **See Commonwealth v. Rodriguez**, 81 A.3d 103, 104 n.2 (Pa.Super. 2013) (stating that "the untimely filing of a court-ordered Rule 1925(b) statement does not automatically result in waiver of the issues on appeal. If the trial court accepts an untimely Rule 1925(b) statement and addresses the issues raised in its Rule 1925(a) opinion, we will not determine the issues to be waived."). In the case *sub judice*, the trial court accepted the untimely Rule 1925(b) statement and had adequate opportunity to prepare an opinion addressing the merits of the issues raised in the Rule 1925(b) statement. Accordingly, we decline to find waiver. **See Burton**, **supra**.

[5] Appellant adequately preserved his weight claim in his post-sentence motion, as well as raised the issue in his court-ordered Pa.R.A.P. 1925(b) statement. **See** Pa.R.Crim.P. 607; Pa.R.A.P. 1925(b).

Specifically, Appellant avers the jury's guilty verdicts are inconsistent with the jury's acquittal of Appellant on the charges of criminal attempt (first-degree murder) and aggravated assault such that the guilty verdicts "shock the conscience." *Id.* at 12. Moreover, Appellant notes there "was no physical evidence linking Appellant to the offenses and [an] absolute lack of a chain of custody regarding the shotgun" such that the jury's verdict was based on speculation, as well as the incredible testimony of Mr. Fuller, who "went back and forth" as to how Appellant allegedly pointed and carried the gun. *Id.* at 12, 15.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, in rejecting Appellant's weight of the evidence claim, the trial court relevantly indicated the Commonwealth relied largely upon the testimony of the victim, Mr. Fuller, in support of the charges filed against Appellant. *See* Trial Court Opinion, filed 8/28/23, at 2 (indicating the jury was free to accept the victim's testimony that Appellant tapped on the car window with the shotgun and stated to the victim that he should leave town or Appellant would kill him); 2-3 (indicating the jury was free to believe the victim's testimony that Appellant held and fired the shotgun in the victim's direction). As the trial court noted, the jury, as finder of fact, was free to find credible the victim's testimony, which specifically described the events and was supported by the spent shotgun shell found near the victim's car, as well as the damage to the victim's car. *See id.* at 1-4.

Further, as the trial court indicated:

[The] evidence supplied by the Commonwealth…addressed each and every element of the crimes for which [Appellant] was found guilty. [Appellant] now argues that there were certain facts which were ignored by the jury, which denied justice in this case. In fact, in the [trial] court's opinion, the jury had little trouble sorting through the evidence presented to arrive at its verdict considering that practically every fact needed to prove an element of the crimes was uncontested. [Appellant] was found "Not Guilty" of two of the most serios crimes charged, (1) Criminal Attempt to Murder, and (2) Aggravated Assault, for the obvious reason that the [jury found] the specific intent element of each crime was lacking. In full review of the testimony received at trial, [the trial court] believes that there was no miscarriage of justice for the jury verdict as rendered.

*Id.* at 4.

We conclude the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence. ***Talbert***, ***supra***. We note the jury was free to determine the weight to be given to each witness's testimony, as well as reject Appellant's theory that Mr. Fuller's testimony was unreliable and incredible. The jury heard all of the testimony, as well as arguments of counsel pointing out any alleged inconsistencies, and would have been aware of the extent of the evidence, including that related to the physical evidence. Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we decline to do so as it is a task that is beyond our scope of review. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact").

Moreover, even assuming, *arguendo*, the jury's "guilty" and "not guilty" verdicts were inconsistent as alleged by Appellant, it is well settled that

"consistency in a verdict in a criminal case is not necessary or required if there is evidence to support each verdict." ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1255 (Pa.Super. 2005) (*en banc*). Here, as the trial court indicated, there was ample evidence to support the jury's guilty verdicts as to the charges of making terroristic threats, simple assault, recklessly endangering another person, and possession of a firearm prohibited. The fact the jury found Appellant "not guilty" of the charges of criminal attempt (first-degree murder) and aggravated assault "is immaterial for purposes of our review" in this case. ***Commonwealth v. Barkman***, 295 A.3d 721, 736 (Pa.Super. 2023) (citation omitted). Accordingly, we find no merit to Appellant's weight of the evidence claim.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/6/2024

- 12 -