**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGEL ADONIS ROBLES-MONTERO | : | |
| | : | |
| Appellant | : | No. 22 MDA 2025 |

Appeal from the Judgment of Sentence Entered August 7, 2024
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0001038-2023

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: NOVEMBER 5, 2025**

Angel Adonis Robles-Montero ("Robles-Montero") appeals from the judgment of sentence imposed following his convictions for burglary, two counts of simple assault, and five counts of recklessly endangering another person ("REAP").[1] We affirm.

The trial court summarized the relevant factual history as follows:

> On August 6, 2023, [Chambersburg Police Officer Nicholas Jacoby-Rockwell ("Officer Jacoby-Rockwell")] responded to an early morning call in Chambersburg, Franklin County, for an active burglary. It was reported that a Hispanic male had unlawfully entered the residence and brandished a firearm. Once on scene, [Officer Jacoby-Rockwell] spoke with . . . Gilsther Morales-Candelario ("Gilsther"). She relayed that the intruder fled from her home after entering it with a firearm and firing a round inside the house. She identified the Hispanic male as her ex-boyfriend, [Robles-Montero].

---

[1] *See* 18 Pa.C.S.A. §§ 3502(a)(1)(i), 2701(a)(1), 2705.

Trial Court Opinion, 12/17/24, at 1 (citations and footnote omitted).[2] The Commonwealth charged Robles-Montero with one count each of criminal attempt - homicide[3] and burglary, two counts of simple assault, five counts of REAP, and seven counts of terroristic threats.[4]

The case proceeded to a jury trial. The Commonwealth presented testimony from several witnesses. Gilsther testified that she was in a relationship with Robles-Montero for approximately six years. The two separated in April 2023, at which time Gilsther moved out of the residence she had purchased and the two shared. Robles-Montero remained in the residence until Memorial Day of 2023. At that time, he left, and Gilsther returned. Gilsther changed the locks, did not provide Robles-Montero with a key, and did not give him permission to enter the home.

Gilsther further testified that, on the morning of the incident, "she received sixteen phone calls from Robles-Montero asking about the location of his truck." Trial Court Opinion, 12/17/24, at 2. "At the time of the incident, Gilsther was in the upstairs bedroom of the home with her significant other, Taino Rodriguez-Rosario ("Taino"), and her oldest daughter. Her other two daughters were in another upstairs bedroom." *Id*. Gilsther eventually

---

[2] For ease of review, when quoting the trial court's opinion, we have changed the references to the "Defendant" to "Robles-Montero."

[3] *See* 18 Pa.C.S.A. §§ 901(a), 2501(a).

[4] *See* 18 Pa.C.S.A. § 2706(a)(1).

answered one of Robles-Montero's calls and told him that she did not know the whereabouts of his truck.

Gilsther further testified to the following. Minutes later,

. . . Robles-Montero entered the home and [went] upstairs where a physical altercation took place between [him] and Taino in the master bedroom. [According to Gilsther, he "had [a] gun in his hand" and threatened to shoot her if she called 911. N.T., 6/6/24, at 34.] Gilsther joined in the struggle which moved to an adjoining bedroom. Robles-Montero was pinned against one of the daughters' beds . . . by Taino and Gilsther. During the struggle, a firearm was discharged. While the struggle ensued, Gilsther's oldest daughter called 911.[]

Trial Court Opinion, 12/17/24, at 2 (citations and footnote omitted).

Gilsther believed that Robles-Montero entered the house by climbing through a first-floor window that he knew could be opened from the outside. After police arrived, Gilsther handed Officer Jacoby-Rockwell Robles-Montero's keys, which she found in the room where he had struggled with Taino. Officer Jacoby-Rockwell's body-worn camera, played for the jury, showed this interaction. On cross-examination, Robles-Montero questioned Gilsther about whether the officer's body-worn camera footage showed her removing a key from his keychain before giving it to police. She answered that it did not.

Taino, who was in a relationship with Gilsther at the time, corroborated her account. Taino testified that Robles-Montero entered the residence with a loaded firearm, threatened to shoot Gilsther if she contacted authorities, and engaged in a physical struggle with him. Fearing for the safety of Gilsther and her children, Taino pushed Robles-Montero into another bedroom and

attempted to take the gun away. At this point, Taino was on top of Robles-Montero, and Robles-Montero discharged the firearm while pointing it at Taino. Taino continued to struggle for control of the weapon while Gilsther assisted. Taino eventually gained possession of the gun, found it jammed, and attempted to retreat downstairs. Robles-Montero pursued him, striking Gilsther along the way. The struggle continued near the back door, where Gilsther broke a lamp over Robles-Montero's head, allowing Taino to exit. Once outside, Taino fired a round into the ground to deter Robles-Montero, who threatened to return and kill them.

The Commonwealth also introduced testimony from Chambersburg Police Sergeant Joseph Jakubic ("Sergeant Jakubic"), who processed the scene for evidence. Sergeant Jakubic stated that he saw freshly moved dirt on the outside of the window and a "palmprint" in the middle of it, along with "fingerprints sliding up the glass." N.T. 6/7/24, at 125-27. Based on these observations, Sergeant Jakubic concluded that someone had recently pushed the window open from the outside to enter the residence. Sergeant Jakubic further testified that the bullet trajectory from the discharged firearm was consistent with a shot fired upward from Robles-Montero's lower position on the bed toward Gilsther and Taino.

Robles-Montero testified in his own defense to all of the following. He still lived at the residence at the time of the incident and some of his clothing and personal belongings remained there. He called Gilsther sixteen times

- 4 -

because he suspected she had taken his truck, and he went to the residence to get her help in finding it. He entered the home through the front door using a key that remained in his possession, not through a window, and he was surprised by Taino's presence. Robles-Montero denied that he had a gun and stated that Taino initiated the confrontation and brandished the firearm. Robles-Montero explained that the firearm discharged while pressed against his back during the struggle, and the gunshot left residue on the white shirt he wore that morning. According to Robles-Montero, he left the shirt at his sister's home after fleeing the scene.

At the end of the first day of trial, after both parties had rested, the Commonwealth directed Chambersburg Police Corporal James Iversen ("Corporal Iversen") to search the home of Robles-Montero's sister for the shirt that Robles-Montero testified he had worn during the incident and left there. The next morning, prior to closing arguments, the Commonwealth requested to reopen its case to present testimony from Corporal Iversen and the trial court heard arguments from both parties. *See* N.T., 6/7/24, at 20-27. The trial court then provided Robles-Montero with an opportunity to review the body-worn camera footage from Corporal Iversen's investigation and present additional argument. The trial court determined that the Commonwealth's additional evidence would not prejudice Robles-Montero. *See id*. at 32, 37. Thereafter, the trial court permitted the Commonwealth to reopen its case to present Corporal Iversen's testimony in response to the

newly disclosed evidence that arose during Robles-Montero's testimony. ***See id***.

Corporal Iversen testified that the search did not uncover the shirt. On cross-examination, Robles-Montero elicited testimony that: (1) investigators conducted the search ten months after the incident, and his sister had cleaned the room and discarded many items; and (2) Corporal Iversen was not aware of Robles-Montero's "status" or whether he had been to the residence during the ten months since the incident. ***Id***. at 43. Corporal Iversen's entire testimony spanned approximately ten minutes.

Immediately following Corporal Iversen's testimony, the parties presented their closing arguments to the jury. At the conclusion of the two-day jury trial, the jury found Robles Morales guilty of one count of burglary, two counts of simple assault — Counts 3 and 4, and five counts of REAP. The jury found Robles-Montero not guilty of the remaining count of criminal attempt - homicide and seven counts of terroristic threats.

On August 7, 2024, the trial court conducted a sentencing hearing. The Commonwealth requested application of the deadly weapon possessed-sentencing enhancement for the burglary conviction and the deadly weapon used-sentencing enhancement for the simple assault and REAP convictions. In response, Robles-Montero argued that neither enhancement applied because: (1) the Commonwealth did not prove ownership of the firearm for the burglary conviction; and (2) the Commonwealth failed to prove that he

used a firearm during the commission of either the burglary or simple assault offenses. The trial court determined that the deadly weapon possessed enhancement applied to the burglary and simple assault convictions and that the deadly weapon used enhancement applied to the REAP convictions. *See* Trial Court Opinion, 3/10/25, at 2.

In applying the enhancements, the trial court found that, for the burglary conviction, the standard range with the deadly weapon possessed enhancement was thirty-nine to fifty-one months. *See* Sentencing Guideline Form; *see also* 204 Pa. Code § 303.17(a). The trial court imposed a sentence of four to ten years for this conviction.

For the simple assault conviction at Count 3, the standard range with the deadly weapon possessed enhancement was three to twelve months.[5] *See* Sentencing Guideline Form; *see also* 204 Pa. Code § 303.17(a). The trial court imposed a consecutive sentence of six months to two years on this conviction. For the simple assault conviction at Count 4, the standard range with the deadly weapon possessed enhancement was three to nine months.

_____

[5] For this count of simple assault, the trial court also applied the domestic violence sentencing enhancement pursuant to 42 Pa.C.S.A. § 9720.8. *See* 42 Pa.C.S.A. § 9720.8(a) (providing "for a sentence enhancement . . . for an offense under 18 Pa.C.S.[A.] § 2701 (relating to simple assault) . . . based on such aggravating circumstances as the assault was committed against a family or household member and the defendant knew the crime was witnessed, either through sight or sound, by a minor who is also a family or household member of the defendant or the victim"). Robles-Montero does not challenge the trial court's application of the domestic violence enhancement on appeal.

*See* Sentencing Guideline Form; *see also* 204 Pa. Code § 303.17(a). The trial court imposed a concurrent term to Count 3 of six months to two years on this conviction.

The trial court also applied the deadly weapon used enhancement for all five counts of REAP. It imposed: (1) four terms of nine months to two years' imprisonment, all to run consecutively to the above sentences; and (1) one term of nine months to two years, to run concurrently. *See* Sentencing Guideline Form; *see also* 204 Pa. Code § 303.17(b). Robles-Montero's aggregate sentence was thus seven and one-half to twenty years' incarceration.

Robles-Montero filed a timely post-sentence motion challenging, *inter alia*, the application of the deadly weapon possessed enhancements to his burglary and simple assault convictions. After a hearing, the trial court denied him relief. Robles-Montero timely filed a notice of appeal. Both the trial court and Robles-Montero complied with Pa.R.A.P. 1925.

Robles-Montero presents five issues for our review:

1. Did the trial court err by denying [Robles-Montero's] motion for judgment of acquittal as to . . . burglary?

2. Did the trial court abuse its discretion in denying [Robles-Montero's] motion in arrest of judgment as to . . . burglary, where the conviction was against the weight of the evidence?

3. Did the trial court err by applying the deadly weapon possessed enhancement to the burglary conviction where there was insufficient evidence to support the application of such an enhancement?

- 8 -

4. Did the trial court err by applying the deadly weapon possessed enhancement to the simple assault convictions where there was insufficient evidence to support the application of such an enhancement?

5. Did the trial court err by permitting the Commonwealth to reopen the record and introduce previously undisclosed evidence?

Robles-Montero's Brief at 18 (unnecessary capitalization omitted).

In Robles-Montero's first issue, he argues that the trial court erred in denying his motion for judgment of acquittal on the burglary charge because the Commonwealth failed to present sufficient evidence to establish the requisite intent. Our standard of review is as follows:

> The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. Upon sufficiency review, we evaluate whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. This Court may not substitute its own judgment for that of the fact-finder.

*Commonwealth v. Powanda*, 304 A.3d 1284, 1288 (Pa. Super. 2023) (citations and quotation marks omitted).

Pursuant to the Pennsylvania Crimes Code:[6]

A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

> (1)(i) . . . enters a building or occupied structure . . . that is adapted for overnight accommodations in which at the time of the offense any person is present and the person

_____

[6] 18 Pa.C.S.A. §§ 101-9546.

> commits, attempts or threatens to commit a bodily injury crime therein[.]

18 Pa.C.S.A. § 3502(a)(1)(i). "The intent to commit *a crime* after entry may be inferred from the circumstances surrounding the incident. This intent may be inferred from actions as well as words. However, actions must bear a reasonable relation to the commission of a crime." ***Commonwealth v. Alston***, 651 A.2d 1092, 1094 (Pa. 1994) (emphasis in original). Once someone has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances. ***See id***. "[T]he Commonwealth is not required to allege or prove what particular crime [a defendant] intended to commit after his forcible entry into the private residence." ***Id***. at 1095.

Robles-Montero argues that the evidence was insufficient to sustain a burglary conviction because the Commonwealth failed to prove he entered the residence with the intent to commit a crime therein. Robles-Montero asserts that mere entry is insufficient to sustain a burglary conviction. Robles-Montero maintains that he entered solely to speak with Gilsther about the truck. According to Robles-Montero, the altercation with Taino — which led to his convictions for simple assault, the only offense with an intent element[7] — arose only after Taino physically engaged him. Robles-Montero contends the

---

[7] Robles-Montero maintains that his only other offense, REAP, includes a *mens rea* of recklessness, and not intent.

- 10 -

trial court erred in denying his motion for judgment of acquittal since the intent to commit simple assault arose only post-entry.

The trial court rejected this argument, concluding that the evidence permitted the jury to find the requisite intent. The court explained:

> Here, the victims' home was owned by Gilsther and there were four household members present at the time of the incident. Robles-Montero does not challenge that he entered the home and admits that he and Gilsther were estranged as of the date of his entry. Therefore, our focus is limited to whether sufficient evidence was presented to prove beyond a reasonable doubt that Robles-Montero entered the home with the intent to commit a crime.
>
> Robles-Montero argues the only crime he could have intended to commit was simple assault because he was found not guilty of all other charges except [REAP], which does not require specific intent. Robles-Montero testified that he went to the home he and Gilsther shared to retrieve his truck and was surprised by Taino's presence at the home. He argues that the assault was the result of an "unfortunate melee."
>
> * * * *
>
> . . . Gilsther and Taino's testimony established that Robles-Montero entered the home after she and Robles-Montero had ended their relationship in April 2023 and he had removed his belongings from their formerly shared home. Gilsther further testified that she changed the locks to her home after Robles-Montero moved out. Her clear intention was to preclude Robles-Montero from the home, and Robles-Montero did not have permission to enter the home on August 6, 2023.
>
> Robles-Montero testified that he entered the home by the front door with a key that had remained in his possession. He further testified that he came to the house because he suspected Gilsther had taken his truck, and he went to the house to get her help in finding it. Robles-Montero's testimony corroborates Gilsther's testimony that he called her approximately sixteen times the morning of August 6, 2023 to ask about his truck. Of

- 11 -

note, Gilsther answered one of Robles-Montero's calls and notified him that she did not know where his truck was located.

Robles-Montero further testified that he was living at the home on August 6, 2023, and was caught by surprise by Taino, who[m] he did not recognize. However, despite physically struggling with a strange man [] and being shot at by him as he fled the property, Robles-Montero did not call the police at any time.

The Commonwealth presented the testimony of Sergeant . . . Jakubic . . . to establish that Robles-Montero likely gained entry to the home through a side window rather than the front door. Sergeant Jakubic testified that the partially opened side window had freshly moved dirt on the outside, indicating that someone had recently traversed the window. Sergeant Jakubic also processed the outside of the window for fingerprints and determined that someone had recently pushed the window open from the outside. Gilsther testified that she did not leave this window open the night before the incident and Robles-Montero had knowledge it could be opened from the outside.

It is the jury's duty to reconcile conflicting testimony. Robles-Montero had called Gilsther sixteen times and she told him she did not have his missing truck. Furthermore, Robles-Montero arrived at Gilsther's home and observed that she did not have his truck. Despite this, Robles-Montero continued to demand the truck from Gilsther once he confronted her in her bedroom. We find it reasonable for the jury to find that Robles-Montero unlawfully entered Gilsther's home with the intention to cause harm[.] . . .

Trial Court Opinion, 12/17/24, at 6-9 (footnote omitted).

Upon review, we conclude that the trial court did not err in denying Robles-Montero's motion for judgment of acquittal. *See Powanda*, 304 A.3d at 1288. Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the jury to find every element of burglary beyond a reasonable doubt. *See Powanda*, 304 A.3d at

1288; *see also* 18 Pa.C.S.A. § 3502(a)(1)(i). Although Robles-Montero claimed he entered the residence solely to speak with Gilsther about the truck, the jury could reasonably infer from the totality of the circumstances that he entered without license or privilege and with the intent to commit a crime.

Testimony established that Gilsther had ended her relationship with Robles-Montero, changed the locks, and intended to exclude him from the residence. Evidence established that Robles-Montero entered through a side window rather than the front door, and that he had repeatedly called Gilsther regarding the truck prior to entry. These circumstances, together with the confrontation that ensued, were sufficient for the jury to conclude that he intended a criminal purpose at the time of entry. *See Alston*, 651 A.2d at 1094. Thus, Robles-Montero's first issue is without merit.

In his second issue, Robles-Montero argues that the trial court abused its discretion in denying his motion in arrest of judgment as to burglary because the verdict was against the weight of the evidence. We note:

> Our controlling standard of review provides that our appellate review of a weight claim concerns the denial of the post-verdict challenge to the weight of the evidence rather than a first-hand review of the credibility of the trial evidence:
>
>> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. Barkman*, 295 A.3d 721, 737 (Pa. Super. 2023) (citations omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id*. at 732 (citation omitted).

Robles-Montero argues that the verdict on the burglary count was against the weight of the evidence because the victims' testimony was inconsistent and lacked credibility. Robles-Montero maintains that he still possessed a key to the residence and entered through the front door, and no witness saw him enter through a window. Robles-Montero further asserts that Gilsther's testimony was unreliable because video evidence showed her removing something from his keychain before giving it to police. Robles-Montero also emphasizes that the jury's acquittals on attempted homicide and

terroristic threats demonstrated that it did not believe the victims' account of the incident. Accordingly, Robles-Montero maintains that the burglary conviction is so contrary to the evidence that it shocks one's sense of justice.

The trial court rejected Robles-Montero's weight of the evidence claim, concluding that while the testimony was conflicting, it had properly instructed the jury on credibility, and the jury was entitled to resolve those conflicts. *See* Trial Court Opinion, 12/17/24, at 11-12. The trial court noted that "juries are presumed to follow a court's instructions[]" regarding credibility determinations. *Id*. at 12 (*quoting* ***Commonwealth v. Naranjo***, 53 A.3d 66, 71 (Pa. Super. 2012)). The trial court also found "compelling that, had Robles-Montero been lawfully in the home, he would have likely contacted law enforcement after finding a strange man, fighting that man for control of a firearm, and fleeing the scene after the firearm was discharged towards him by the stranger." ***Id***. Accordingly, the trial court concluded that the jury's verdict did not shock the conscience and denied the motion for a new trial. ***See id***.

Viewing the record in its entirety, we conclude the jury's verdict does not shock one's sense of justice, and the trial court did not palpably abuse its discretion in denying the weight-of-the-evidence claim. ***See Barkman***, 295 A.3d at 737. Here, the jury heard conflicting testimony regarding whether Robles-Montero lawfully possessed a key and entered through the front door or gained access through a side window. It was within the jury's province to

assess the credibility of the witnesses, weigh the evidence, and resolve these conflicts. *See Barkman*, 295 A.3d at 732. Moreover, the trial court reasonably observed that, if Robles-Montero had been lawfully present within his own home, he would likely have contacted law enforcement after the violent confrontation, yet he did not.

Additionally, we reject Robles-Montero's argument, that the jury's findings of acquittal on the attempted homicide and terroristic threats established that the victims' testimony was not credible. *See* Robles-Montero's Brief at 29. The charges involved different elements, and juries are free to return inconsistent verdicts. *See Barkman*, 295 A.3d at 738. Accordingly, Robles-Montero's second issue lacks merit.

In his third and fourth issues, Robles-Montero argues that the trial court erred in its application of the deadly weapon possessed sentencing enhancement to his burglary and simple assault convictions. Preliminarily we note that a challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of a sentence. *See Commonwealth v. Williamson*, 330 A.3d 407, 419 (Pa. Super. 2025) (citations omitted).

> An appeal from the discretionary aspects of sentencing is not guaranteed as a matter of right. Before addressing such a challenge, we must first determine: (1) whether the appeal is timely; (2) whether the appellant preserved his or her issue; (3) whether the appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code.

*Id*. at 419-20 (citation omitted). "[I]f an appellant fails to include a Rule 2119(f) statement in his appellate brief and the Commonwealth objects, the issue is waived." **Commonwealth v. Davis**, 341 A.3d 808, 813 (Pa. Super. 2025) (citation omitted).

Instantly, Robles-Montero has failed to comply with the requirement of Rule 2119(f), and the Commonwealth expressly objects to the statement's absence. **See id**.; **see also** Commonwealth's Brief at 20. Furthermore, Robles-Montero has not filed a reply brief responding to the Commonwealth's objection. Therefore, we find that Robles-Montero did not invoke this Court's jurisdiction, and he has waived his discretionary sentencing claims.

In any event, even if Robles-Montero had properly invoked this Court's jurisdiction regarding his discretionary aspects of sentencing claims, he would not merit relief. We review a sentencing court's decision to apply a deadly weapon enhancement for abuse of discretion. **See Williamson**, 330 A.3d at 420. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support as to be clearly erroneous." **Commonwealth v. Kneller**, 999 A.2d 608, 614 (Pa. Super. 2010) (*en banc*) (citation omitted).

The enhancement applies where the defendant possessed or used a deadly weapon during the commission of the offense. **See** 204 Pa. Code § 303.10(a)(4. "The trial court may not disregard an applicable enhancement

when determining the appropriate sentencing ranges." ***Williamson***, 330 A.3d at 420. To establish use of a deadly weapon during the commission of the offense, the Commonwealth must show, by a preponderance of the evidence, "that the defendant used the weapon to threaten or injure the victim while committing the particular offense." ***Id***.

> Importantly, whether the deadly weapon at issue was ultimately found is not dispositive to a sentencing court's application of the deadly weapon enhancement. The fact that the device or instrumentality employed by [the defendant] in committing the [crime] was fortuitously not seen or found will not allow [him] to escape the application of the weapon enhancement to his sentence.

***Id***. at 420-21 (citation omitted).

Robles-Montero argues that the trial court erred in applying the deadly weapon possessed enhancement to his burglary and simple assault convictions. Robles-Montero asserts that there was insufficient evidence that he possessed a firearm during either offense. For the burglary, Robles-Montero claims that: (1) no credible testimony or physical evidence established possession at the time he entered the residence; and (2) the trial court applied the deadly weapon possessed enhancement based solely on the testimony of Gilsther and Taino, despite acknowledging there was no evidence that he was the registered owner of the firearm. Robles-Montero challenges the court's statement that would "evaluate the evidence as it exists." Robles-Montero's Brief at 32. He contends that the trial court failed to apply the proper standard of proof, relied on potentially unreliable testimony, and erred

in imposing the enhancement. For the simple assault convictions, Robles-Montero further contends that the evidence he discharged the firearm was "immaterial without the non-credible testimony of [Taino and Gilsther]. *Id*. at 33.

The trial court determined that the deadly weapon possessed enhancement applied to both the burglary and simple assault convictions. For the burglary, the court relied on the testimony of Gilsther and Taino, who confirmed that the firearm did not belong to either of them, "leading to the conclusion that it was possessed by Robles-Montero at the initiation of the offense." Trial Court Opinion, 12/17/24, at 17. Although the trial court acknowledged Robles-Montero's argument "that a registered owner of the firearm was never established at trial and no search was performed through the Pennsylvania Instant Check System," the court determined it "must evaluate the evidence as it exists." *Id*. at 17-18.

For the simple assault convictions, the trial court found "most compelling" the physical evidence presented by Sergeant Jakubic, who testified that "the firearm was discharged . . . from Robles-Montero's lower position on the bed at an upward angle toward Gilsther and Taino." *Id*. at 18. As the trial court explained, this evidence demonstrated that "Robles-Montero had enough control of the firearm to discharge it towards the lawful occupants of the home," thus satisfying the criteria for applying the enhancement. *Id*.

We would conclude that the record supports the trial court's application of the deadly weapon possessed enhancement. The testimonial and physical evidence established, by a preponderance of the evidence, that Robles-Montero possessed a firearm during the burglary and simple assault offenses. *See* 204 Pa. Code § 303.10(a)(4); *see also Williamson*, 330 A.3d at 420. The trial court correctly recalculated the adjusted ranges. Thus, Robles-Montero's third and fourth claims are without merit.

In his fifth issue, Robles-Montero challenges the trial court's decision permitting the Commonwealth to reopen the record to introduce testimony from Corporal Iversen after both parties had rested. A trial court has the discretion to reopen the record after the close of evidence, and an appellate court will not disturb that decision absent an abuse of discretion. *See Commonwealth v. Baldwin*, 58 A.3d 754, 763 (Pa. 2012). The trial court may reopen a record after the parties have rested their cases to prevent "a failure or miscarriage of justice." *Baldwin*, 58 A.3d at 763. Factors relevant to a decision to reopen a trial record include: the timing of the request to open; the nature of the proffered testimony or evidence; the reasons for and reasonableness of the late proffer; and the relative weight of the proffered evidence versus the potential for disruption or prejudice. *See Baldwin*, 58 A.3d at 763 (citation omitted).

Robles-Montero argues that the trial court abused its discretion by allowing the Commonwealth to reopen the record after both parties had rested

and were prepared to deliver closing arguments. Robles-Montero contends that the Commonwealth offered no reasonable explanation for failing to present the evidence in its case-in-chief and that the additional testimony from Corporal Iversen was untimely, minimally relevant, and unfairly prejudicial. According to Robles-Montero, the evidence improperly attacked his credibility, forced disclosure of his incarceration, and denied him sufficient time to review newly introduced materials, including body-camera footage.

The trial court found that Robles-Montero's claim did not warrant a new trial. As the trial court explained:

> Here, we permitted the Commonwealth to reopen its case to introduce testimonial evidence [it] proffered would impeach Robles-Montero's testimony. Robles-Montero testified at trial that the firearm was discharged while it was held up against his back and therefore, he did not have actual control of the firearm. To corroborate this testimony, Robles-Montero testified that the firearm left residue on the back of the white shirt he wore during the incident. He further testified that the shirt had been left at his sister's house, where he ran to after fleeing the scene. After the close of the first day of trial, the Commonwealth directed Corporal [Iversen] to search Robles-Montero's sister's home for the shirt in question to determine whether the firearm had been discharged at his back and [notified defense counsel] of its intention to request admission of this evidence. Ultimately, we permitted Corporal Iversen to testify that a search of Robles-Montero's sister's home did not uncover the shirt.

> The Commonwealth first learned that Robles-Montero's shirt was at his sister's house during [his] testimony on the first day of trial.

> Furthermore, the nature of the evidence was to establish Robles-Montero's version of events; namely that he did not have control of the firearm when it discharged in the home. Robles-Montero presented his own evidence by cross-examining Corporal Iversen to establish that the investigation for the shirt was

conducted ten months after the event and Robles-Montero's sister had cleaned out the room he left the shirt in and threw many items away. Therefore, we find that the Commonwealth had a reasonable explanation for its failure to present this evidence during its case-in-chief and Robles-Montero also had a reasonable opportunity to present rebuttal evidence.

Furthermore, the introduction of this evidence did not lend any greater importance than other evidence presented at trial. The inclusion of Robles-Montero's shirt would support his testimony that the firearm went off behind his back and the absence of this evidence was appropriately rebutted by Robles-Montero's cross-examination of Corporal Iversen.

We also find that there was minimal disruption to the trial schedule and the jury as a result of this additional evidence. At the close of testimony on the first day of trial, the court advised the jury that [it] would be hearing closing arguments and final instructions the next day. At the start of the second day and after discussion with both parties, the court notified the jury that an additional witness would be examined then counsel would move into closing arguments. Corporal Iversen testified from 11:16 a.m. to 11:25 a.m. While we acknowledge the second day of trial started late to allow the court to consider the Commonwealth's request, we do not find that the additional Commonwealth witness significantly disrupted the trial and the allotted time of two days was not extended.

Trial Court Opinion, 12/17/24, at 14-16 (citations omitted).

Following our review, we discern no abuse of discretion in the trial court's decision to permit reopening of the record. The trial court acted within its discretion in allowing the Commonwealth to reopen its case to present Corporal Iversen's brief rebuttal testimony. The record reflects that the Commonwealth only became aware of the potentially relevant evidence — the shirt allegedly bearing firearm residue — during Robles-Montero's testimony and promptly sought to investigate and introduce the results. *See Baldwin*,

58 A.3d at 763. The trial court properly exercised its discretion in finding the Commonwealth's explanation reasonable; the Commonwealth narrowly tailored the testimony to address an issue Robles-Montero raised for the first time, and the court gave him an adequate opportunity to cross-examine the witness. The addition of this limited testimony did not distort the evidentiary balance, prejudice Robles-Montero, or meaningfully disrupt the trial schedule. Thus, Robles-Montero's fifth claim merits no relief.

As we determine that none of Robles-Montero's issues merits relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/5/2025